# UNITED STATES DISTRICT COURT
## IN AND FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| FRASERSIDE IP LLC,<br>An Iowa Limited Liability Company | |
| Plaintiff, | No. 3:11-cv-03025-MWB |
| vs. | **BRIEF IN SUPPORT OF**<br>**MOTION FOR DEFAULT**<br>**JUDGMENT** |
| WhoIsGuard, dba<br>XHamster.com, and John Does 1 - 100<br>and John Doe Companies 1 - 100 | |
| Defendant(s). | |

———————————————

COMES NOW, Plaintiff Fraserside IP LLC, by and through its counsel, Chad L. Belville, and respectfully requests that this Court enter Default Judgment against Defendants WhoisGuard dba XHamster.com. Plaintiff seeks damages, attorney fees, costs, award of domain names, and injunctive relief. In support of its motion, Plaintiff provides the attached Brief, Declaration and Attachments.

# TABLE OF CONTENTS

Motion for Default Judgment by Court                                                    1

Table of Authorities                                                                     3

Brief in Support of Motion

     Procedural Considerations                                                          5

     Plaintiff Effected Service of Process on Defendants Pursuant to Fed.R.Civ.P.4       6

     The Facts of the Record Show that a Default Judgment is Warranted                  6

     The Specific Relief Sought by Plaintiff is Factually Supported and Authorized by Law   8

     Defendant Pirated Plaintiff's Works for Commercial Gain                            8

     Statutory Damages are Authorized                                                  12

     Plaintiff's Copyrighted Works are Valuable                                        14

     The Infringing Acts Harmed the Value of Plaintiff's Works                         15

     The Facts and Law Support a Maximum Statutory Award                               18

     Increased Damages for Willfulness                                                 19

     Plaintiff is Entitled to Injunctive Relief and Attorney's Fees                    22

     Discussion of Eitel Factors                                                       23

          Possibility of Prejudice to Plaintiff                                          23

          The Merits of Fraserside's Substantive Claim and the Sufficiency of the
Complaint                                                                               24

          The Amount of Money at Stake                                                  24

          The Remaining Factors                                                         25

     Conclusion                                                                        25

<u>Cases</u>

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.2d 101  (2d Cir. 2001)……………………..…8, 18

 *Hamil America, Inc. v. GFL*, 193 F.3d 92 (2d Cir. 1999)…………………………………..8

*Chi-Boy Music v. Charlie Club, Inc*., 930 F.2d 1224 (7th Cir. 1991)……………………12, 13

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co*., 74 F.3d 488 (4th Cir. 1996)…...13

*F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228  (1952)………………13, 19

*Elektra Entertainment Group, Inc. v Bryant*, 2004 U.S. Dist. LEXIS 26700 (C.D. Cal. Feb. 13,
         2004)……………………………………………………………………………………16

*A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013-1014 (9th Cir. 2001)…………..16

*Perfect 10, Inc. v. Talisman Communs., Inc*., 2000 U.S. Dist. LEXIS 4564 (C.
         D. Cal. Mar. 27, 2000)……………………………………………………………………17, 19

*Warner Bros. Entm't, Inc. v. Caridi*, 346 F. Supp. 2d 1068 (C.D. Cal. 2004)………………..18

*Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.* (259 F.3d 1186 (9th Cir.
2001)(cert denied, 534 U.S. 1127 (2002)……………………………………………………18

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd.,* 149 F.3d 987 (9th Cir. 1998)……..19

*International Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652 (D.N. Ill. 1987), affirmed 855 F. 2d
375 (N.D. Ill. 1987)……………………………………………………………………………19

*Hickory Grove Music v. Andrews*, 749 F. Supp. 1001 (D. Mont. 1990)……………………..20

*Van Halen Music v. Foos*, 728 F. Supp. 1495 (D. Mont. 1989)……………………………..20

*Derek Andrew, Inc. v. Poof Apparel Corp.,* 528 F.3d 696 (9th Cir. 2008)……………………20

*Tiffany Inc. v. Luban,* 282 F.Supp. 2d 123 (S.D.N.Y. 2003)…………………………………20

*Fallaci v. New Gazette Literary Corp.*, 568 F.Supp. 1172 (S.D.N.Y. 1983)………………20

*Warner Bros. Ent, Inc. v. Duhy*, 2009 U.S. Dist. LEXIS 123332 (C.D. Cal. Nov. 30, 2009)…...22

*Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283 (2d Cir. 1999………………………………22

Case 3:11-cv-03025-MWB   Document 12-1   Filed 08/15/11   Page 3 of 27

*Eitel v. McCool,* 782 F.2d 1470 (9th Cir. 1986). …………………………………22, 23, 24

*PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp.2d 1172 (C.D. Cal. 2002)…………….23, 24

*PepsiCo, Inc. v. Distribuidora La Matagalpa, Inc.,* 510 F. Supp.2d 1110 (S.D. Fla. 2007).…23

Statutes

17 U.S.C. § 502(a)                                          21

17 U.S.C. § 505                                             22

17 U.S.C. § 504 (c )                                   12, 13, 19

17 U.S.C. § 512 (c )(2)                                   7, 10

Fed.R.Civ.P. 55(b)(2)                                      7

H.R. Rep. No. 106-216 (1999)                              13

Declarations and Exhibits

1.  WhoIs Showing Registered Owner of www.XHamster.com as of Aug 15, 2011        5, 6

2. Defendant Attorney's Email to Plaintiff's Attorney July 14, 2011              6, 22

3.  ICANN Frequently Asked Questions                                            6

4. Defendant Attorney's Email to Plaintiff's Attorney August 12, 2011           17

5.  New and continuing infringements on Defendant website as of August 12, 2011  21

6.  Declaration of Jason Tucker                                          9, 10, 11, 12

# I.    PROCEDURAL CONSIDERATIONS

## A.  The Court has Jurisdiction over the Subject Matter and the Defendants

1.      This Court has subject matter jurisdiction pursuant to 17 U.S.C. §§ 101 et seq., Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), 15 U.S.C. § 1121, 15 U.S.C. § 1125, 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

2.      This Court has personal jurisdiction over the Defendants pursuant to 28 U.S.C. §§ 1391(b), (c), and/or (d).  Further, this Court has personal jurisdiction over the Defendants as they have engaged, and continue to engage, in business activities in and directed to this district, and have  committed tortious acts within this district or directed at this district.

3.      WhoIsGuard dba XHamster.com .  (hereinafter "XHamster") is the registered owner of the  domain name www.XHamster.com and operated and commonly known as XHamster.  *See* Attachment 3 showing registered domain owner as of August 15, 2011

4.      Plaintiff is duly organized in the State of Iowa.  Defendant is subject to jurisdiction in Iowa, as the harm of copyright infringement is directed at the copyright owner, causing harm in the Plaintiff's jurisdiction and subjecting a defendant to jurisdiction.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§1391(b), (c) and (d); and 28 U.S.C. §1400(a).

**B. Plaintiff Effected Service of Process on Defendants Pursuant to Fed. R. Civ. P. 4(h)**

6.      Service on defendants was made pursuant to the express provisions of the Fed. R. Civ. P. 4(h)(1). *See* ECF 8.

7.      Defendant has been served via service on Defendant's Agent at the registered address of the registered owner of the domain www.XHamster.com.  *See* Attachment 1 showing registered owner of the domain XHamster and Attachment 3, ICANN FAQ stating that:

> Information about who is responsible for domain names is publicly available to allow rapid resolution of technical problems and to *permit enforcement of consumer protection, trademark, and other      laws.* The registrar will make this information available to the public on a "Whois" site. It is however possible      to register a domain in the name of a third party, as long as they agree to accept responsibility….
> *(emphasis added)*

**C. The facts of the Record Show That a Default Judgment is Warranted**

8.      Plaintiff Fraserside IP LLC (hereinafter "Fraserside" or "Plaintiff") initiated this action against WhoIsGuard dba www.xhamster.com May 24, 2011, seeking damages and injunctive relief for claims of copyright.  *See* ECF Document 6.

9.      On June 28, 2011, service of Summons and Complaint was made upon John Meyers, the person in charge of the business at the registered address of the registered owner of the domain www.xhamster.com. *See* ECF Document 8.

10.     After Service of Complaint and Summons of the suit, Defendant, through counsel, contacted Attorney for Plaintiff via email *See* Attachment 2. In the Defendant's email, Defendant acknowledged the present suit in the United States District Court for the Northern District of Iowa but claimed that the real owner of the named domain owner was not the registered owner and claimed that service had not been effected. *Id.*

11.     The rules of ICANN, the Internet Corporation for the Assignment of Names and Numbers, requires that domains be registered to the rightful owner and that all contact information be kept up to date. *See* Attachment 3 ICANN FAQ. Further, ICANN does state that *a third party may be listed as the registered owner of the domain, so long as that third party accepts responsibility for the domain (emphasis added). Id.* Plaintiff has followed the rules of Court and the rules of registration of domains by serving the registered owner of the domain, which is required by ICANN to be responsible for the domain and keep address and contact information current.

12.     Although Defendants were served and aware of this action, Defendants nonetheless did not answer or file any responsive pleading to the Complaint. As Defendants were served and furthermore evidenced knowledge of the Complaint yet failed to file an answer or responsive pleading, Plaintiff sought the Clerk's Entry of Default.

13.     The Clerk entered Default August 1, 2011. *See* ECF Document 11.

14.     A Court Order entering default judgment against Defendants is now proper pursuant to Fed. R. Civ. P. 55, and as such, the Court ordered that Plaintiff file a Motion for Default on or before August 15, 2011.

15.     Defendant has again contacted Plaintiff's attorney reiterating its position as to serving the registered and (by requirement) responsible owner of the domain, refusing to file appearance or pleadings.  See Attachment 4, Second Email from Defendant Attorney to Plaintiff Counsel.

**D.     The Specific Relief Sought by Plaintiff Is Factually Supported and Authorized by Law**

16.     This Motion for Default Judgment is based on the allegations of the Complaint (ECF Document 6). Defendants have admitted all of the facts therein by failing to respond.  This Motion also relies on the facts attested to by the Declaration of Jason Tucker (hereinafter "Tucker Dec.") filed in support hereof and additional exhibits filed in support hereof.  Those materials are sufficient to justify the requested relief.

**II.     <u>Defendants Pirated Plaintiff's Works for Commercial Gain</u>**

17.     It is well settled that, "to prevail on a claim of copyright infringement, the Plaintiff must demonstrate both (1) the ownership of a valid copyright and (2) infringement of the copyright by the defendant."  *Yurman Design, Inc. v. PAJ, Inc*., 262 F.2d 101, 108-109 (2d Cir. 2001); *Hamil America, Inc. v. GFL*, 193 F.3d 92 (2d Cir. 1999). The facts are absolutely clear.

18.     Plaintiff Fraserside, through its parent and parent's subsidiary entities, produces high quality adult entertainment films, which are distributed throughout the world on DVD,  through pay-per-view and subscription television, over the Internet through paid subscription and pay-per-view, as well as through pay-per-view closed circuit systems found in many of the world's hotels. Fraserside IP LLC owns the copyrights and trademarks in  those materials and has registered them with the United States Copyright

Office.  See ECF 6, Complaint, Pp. 45-117 showing copyright certificate numbers of Plaintiff's copyrighted intellectual property.

19.     XHamster is a website that provides adult-themed audiovisual content to the public.  The sole type of works available on the website appear to be copyrighted videos.  *See* ECF 6, Complaint, Pp. 33.  These videos are stolen from a number of adult entertainment companies, including Plaintiff.  XHamster visitors are free   to join and view videos, including those videos owned by Plaintiff.  Defendant websites offer enhanced viewing and download of Plaintiff's copyrighted works for a monthly membership fee, which financially benefits Defendants but provides nothing for the true owners of the works displayed.

20.     Additionally, Defendant's business model depends on ad generated income and profits.  Defendant's websites include banners and pop up advertisements that appear on all pages containing Plaintiff's copyrighted works, without any of the advertising revenue being shared with (or even reported to) the Plaintiff.  A recently distributed solicitation for advertising quotes a rate of $44,000 for one banner for one month.  There appear to be multiple banners on the Defendant website, estimated to generate revenue  in excess of $250,000 per MONTH, in addition to other banners of various sizes and advertising opportunities.  The actual advertising revenue generated by Defendant's websites is likely above a million dollars per month. Advertising revenue on Defendant websites does not benefit the true owners of the works displayed. See Tucker  Dec. ¶10, 11

21.     Neither Defendant XHamster nor the individual viewing the pirated material pays anything to the actual copyright owner of the pirated materials.

22.     Plaintiff Fraserside discovered over seventy-two (72) copies of its copyrighted material illegally shared on Defendant's website *See* ECF Document 6, Paragraphs 45 through 117.

23.     Defendants had no authorization to duplicate or distribute the Plaintiff's copyrighted works.  ECF 6.

24.     The audiovisual works at issue are valuable, and easily discernable as professionally produced works.  Even a casual observer would instantly recognize Plaintiff's works as being professionally created and not amateur content. Plaintiff, through its parent and subsidiaries, created the works using highly talented writers, performers, directors, cinematographers, lighting technicians, set designers, and video editors. Tucker Dec. ¶ 6. Plaintiff's works were created using the highest quality cameras, film (for those productions made with film) lighting, and editing equipment, using detailed sets to produce works of extraordinary quality that far exceeds the standard found in run-of-the-mill adult productions.  Tucker Dec. ¶ 6

25.     Plaintiff conducted an investigation, which revealed that Defendant did not have a registered DMCA Agent at the time the infringements were documented, as required by  17 U.S.C. §512(c)(2), to qualify for the DMCA safe harbor provisions.

26.     Defendant earns revenue through its membership fees and sales of advertising space on its websites.  Defendant is able to increase Internet traffic based on the number and quality of videos available on its website and is able to sell ad space based on its site's daily hits and number of users, which in turn is influenced by the number of new videos uploaded as well as their quality and desirability.  Defendant website XHamster is

ranked among the 75 busiest websites in the world *See* ECF Document 6, Paragraph 22 and Tucker Declaration.

27.     Defendants' unauthorized reproduction, public display, and distribution of Plaintiff's works serve as an inducement, attracting millions of individuals to access the Defendant XHamster website, which generates the enormous traffic volume that drives Defendant's ad space pricing.  Individual surfers may also sign up for Defendant's memberships in order to download Plaintiff's copyrighted works in full, which financially benefits Defendants but provides nothing for the true copyright owners. Tucker Dec. ¶ 7 - 11

28.     Defendants reproduced, distributed, and profited from Plaintiff's works on Defendant XHamster websites. They actively engaged in, promoted, and induced copyright infringement. Defendants intentionally, knowingly, negligently, or by willful blindness built a library of works that infringed on copyrighted material for drawing Internet traffic to view the works and in order to sell ad space on its website, creating substantial revenues thereby, and to generate revenue from sale of its memberships. Defendants reproduced, reformatted, and distributed Plaintiff's copyrighted works by and through servers and/or other hardware owned, operated, and/or controlled by Defendants. Tucker Dec. ¶ 8

29.     Defendants infringed Plaintiff's copyrights by reproducing and distributing the works through Defendant's  websites  without proper approval or authorization of Plaintiff.   Defendants knew or should have reasonably known they did not have permission to exploit Plaintiff's works on the XHamster website and further knew or should have known their acts constituted copyright infringement.

30.     Defendants made no attempt to discover the copyright owners of the pirated works before exploiting them.  Defendants failed and refused to take any reasonable measures to determine the owner or license holder of copyrighted works. Tucker Dec. ¶ 8

31.     Defendants controlled the files removed from Defendant's website and determined which files remained.   Defendant never adopted procedures to ensure that distribution of Fraserside's or others' copyrighted materials would not occur. Tucker Dec. ¶ 8

32.     Defendant XHamster was aware, either actually or constructively, should have been aware, or was willfully blind that pirated copyrighted materials comprised the most popular videos on the Defendant's system.  Defendant affirmatively and willfully accommodated Internet traffic generated by the illegal acts. Tucker Dec. ¶ 7-9

33.     Quite simply, Defendants are unabashed and unrepentant intellectual property thieves.  They are fully aware that their actions were illegal, are fully informed of this action, have been served with the Complaint, have been warned about the consequences of default, refused to participate in this action, and continue to infringe copyrighted works for commercial gain.   Defendants cannot complain when a default judgment is entered against them.

**2.      <u>Statutory Damages Are Authorized</u>**

34.     The Copyright Act provides for a plaintiff to recover, at its election, either (1) its actual damages and (to the extent not redundant) defendant's profits attributable to infringement, or (2) statutory damages.

35.     If the works were registered with the U.S. Copyright Office prior to the

commencement of the infringing activity, the copyright holder may elect statutory damages in the amount of $750.00 to $30,000.00 per work, increased to $150,000.00 in cases (such as this one) of willful infringement.  17 U.S.C. § 504(c).

36.     Plaintiff registered the Works prior to the commencement of the infringing activity.  The value of Plaintiff's content, the damage caused by Defendants' unauthorized reproduction and distribution to hundreds of thousands of potential consumers, and the willfulness of Defendant's' infringing actions, warrant a sizeable award.

37.     Either basis supports the amount Plaintiff Fraserside seeks in this motion.  For the sake of simplicity, Fraserside primarily couches its request in statutory damage terms as set forth further below and seeks award of the domains used to infringe Plaintiff's copyrighted works.

38.     Because actual damages are often hard to prove, statutory damages have been authorized to make such proof unnecessary.  *Chi-Boy Music v. Charlie Club, Inc*., 930 F.2d 1224, 1229 (7th Cir. 1991).  Where timely registered works are infringed, as occurred here, the Copyright Act authorizes statutory damages.  17 U.S.C. §504(c). Where, as here, infringement is "willful," the amount may be as high as $150,000 for each infringed work.  *Id*.  Congress increased the maximum from $100,000 to $150,000 because it found large awards to be necessary and desirable to deter the great temptation to infringement posed by modern computer technology.  H.R. Rep. No. 106-216 (1999), pp.6-7.  The critical purpose of deterring similar misconduct permits a maximum per work award for willful infringement, even where the infringement caused little to no damage.  *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co*., 74 F.3d 488,

496-97 (4th Cir. 1996) (collecting authority and sustaining maximum awards despite no proof of actual damages); *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 234 (1952) (for willful infringement a maximum award is permissible "even for uninjurious and unprofitable invasions").

39.     Plaintiff Fraserside has been damaged by Defendant's conduct, continues to be damaged by such conduct, and has no adequate remedy at law to compensate for all of the possible damages stemming from the Defendant's conduct.

40.     Pursuant to 17 U.S.C § 504(c), Plaintiff elects the right to recover statutory damages, but submits this application with actual damages discussed – and is prepared to offer additional in-court testimony with respect to actual damages.

**3.    <u>Plaintiff's Copyrighted Works Are Valuable</u>**

41.     Plaintiff, by and through its parent and subsidiary entities, has been engaged in the production, distribution and marketing of adult themed entertainment for over 40 years.  Plaintiff Fraserside IP LLC is a wholly owned entity which is part of a larger, inter-related group of companies all under common ownership.  Plaintiff Fraserside IP LLC is the legal owner of the copyrights and trademarks that are the subject of this action, having been transferred within the group of companies by the registered owners. Fraserside IP LLC stands as successor in interest and as a wholly owned entity, making claims accordingly.  When Plaintiff began production, NASA had not yet achieved its goal of landing a man on the moon, a first class postage stamp cost a nickel, gasoline contained lead and sold for $0.33 a gallon, and the sale of erotic materials was legally risky in the United States.  In the decades since then, the US Supreme Court recognized the First Amendment rights in erotic commercial enterprise, the Cold War ended and the

space race went commercial. Fraserside, by and through its parent and subsidiary entities, continued to produce, market and distribute high quality adult entertainment, steadily building a worldwide reputation in its industry, requiring millions of dollars investment. Fraserside, more commonly known as Private, is one of the oldest and most recognized high quality producers of adult erotica. It is considered the largest European distributor of adult material in Europe. The branding strength of the Private name is partially due to its longevity and partially due to the consistently high quality content it produces. Consumers of adult erotica know and seek out the Private label because it symbolizes quality.

42.     Although the technology has changed since the 1960's, Plaintiff has always used high-quality equipment, including state of the art cameras, lighting, editing and reproduction equipment. Plaintiff employs experienced writers, directors, cinematographers, photographers and editors and films in exotic locations. Plaintiff has grown to a multinational, publicly traded and socially responsible company that produces high-quality product under premium brands. Simply put, Plaintiff's experience in this industry, persistent pursuit of quality and financial commitment behind Plaintiff's production, distribution and marketing result in a product that is superior to the content of its competitors and recognized by relevant consumers.

Since the advent of digital technology, video production now only requires an inexpensive hand held camera and a cheap laptop. The erotic adult market has been flooded with low quality, easy-to-produce amateur footage. Plaintiff distinguishes itself with its exotic shoot locations, scripting, set building, editing, and professional

appearance of its product. Plaintiff protects its image as a premium brand in order to maintain the value of its products.

4. **The Infringing Acts Harmed the Value of Plaintiff's Works**

43.    Plaintiff's, by and through its parent and parents subsidiaries, ability to sell and market its products, including DVDs, internet website memberships, internet website pay-per-views, hotel room pay-per-views, cable television licensing, and other licensing is directly dependent upon its ability to control the distribution of its works. When thieves such as Defendant make Plaintiff's valuable copyrighted works available for nothing, that diminishes the value of the huge investment in copyrighted works made by Plaintiff.

44.    Defendants caused Fraserside harm by allowing consumers to view Plaintiff's copyrighted works for no fee whatsoever. Each copyrighted work of Plaintiff's received over 10,000 views. These were not mere samples of Plaintiff's property that were given away – Defendants gave away Plaintiff's entire full-length videos for $0.00 to any potential customer that wanted to view them. **Each potential consumer that was able to view Plaintiff's content for nothing is a potential customer that will not now pay for Plaintiff's product.**

45.    Defendants caused Plaintiff harm by reproducing and distributing Fraserside's works with no digital protection systems, thereby making it possible for users to download the works to their own computers and further distribute the works. If each person who viewed Plaintiff's copyrighted works on Defendant's website had purchased the video from Plaintiff's site at a discounted rate of $14.95, Plaintiff would have earned $22,425,000. This amount does not take into account the number of people who might

have purchased a premium video from Plaintiff had Plaintiff's materials not been made available for free by Defendants. Since a downloaded digital file can be reproduced an infinite number of times, the potential for damage increases algebraically. "When digital works are distributed via the internet, as in this case, every downloader who receives one of the copyrighted works from Defendant(s) is in turn capable of also transmitting perfect copies of the works. Accordingly, the process is potentially exponential rather than linear, threatening virtually unstoppable infringement of the copyright." *Elektra Entertainment Group, Inc. v Bryant*, 2004 U.S. Dist. LEXIS 26700 (C.D. Cal. Feb. 13, 2004), citing *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013-1014 (9th Cir. 2001) The amount of actual damages is, therefore, likely exponentially higher than $22,425,000. Also, as Defendant sold memberships to its users, Defendant benefited financially from every consumer that bought a membership so that s/he could download Plaintiff's videos. Defendant not only gave Plaintiff's copyrighted materials away, Defendant took money for Plaintiff's products, depriving the legitimate copyright owners of the fruits of their labors.

54. In *Perfect 10, Inc. v. Talisman Communs., Inc*., 2000 U.S. Dist. LEXIS 4564 (C. D. Cal. Mar. 27, 2000), plaintiff magazine publisher sued a website for publishing its photographs on the Internet. Evaluating damages the Court wrote, "While it would be difficult to quantify Perfect 10's damages resulting from the infringement, it is clear that Perfect 10 has been severely damaged. The photographs have been distributed worldwide, in a form that is easy to download and easy to copy. A virtually unlimited number of copies can be made of the copyrighted photographs, as a result of [defendant's] infringement." *Perfect 10, Inc.,* 2000 U.S. Dist. LEXIS 4564 at 11. The

Court went on to award the maximum statutory award for willful infringement ($100,000 per work at the time) for each infringed photograph. This $100,000 per photograph certainly demonstrates a legal basis for Fraserside claiming that much per video, if not more. Defendant's websites are among the largest, by traffic volume, in the world and reach millions of potential consumers each day.

46.     The infringement of Defendant is for a commercial purpose, and Defendant's websites reach millions of potential consumers every day. Each potential consumer that is able to obtain Plaintiff's valuable work for nothing will not become a paying customer of Plaintiff's in the future. Defendant's actions have caused immeasurable future damage by conditioning potential consumers to expect Plaintiff's valuable quality products for nothing, thereby making it difficult if not impossible to turn those potential consumers into actual customers.

**5.    The Facts and Law Support A Maximum Statutory Award**

47. The infringements here were willful and malicious. Defendants knew, or should have known, that their conduct was unlawful, and acted without the slightest pretense of a justification.

48.     Defendants' objective to was to steal Fraserside's property for financial gain. There is no other plausible objective.

49.     The Defendant's illegal actions were not a momentary lapse, but a sustained commercial enterprise, and as one of the busiest websites on the planet, one with the ability to generate tens of millions of dollars in revenue. To deter others from yielding to the same temptation, a large award is appropriate. *Yurman*, 262 F.3d at 113-114.

50.     Defendants willfully infringed Fraserside's works at least seventy-three (73)

times.   The sheer volume of infringements indicates the willfulness of Defendant's

actions.

51.     On a motion for default judgment, a district court awarded a maximum statutory

award of $150,000 each for infringements of  *The Last Samurai* and  *Mystic River*, when

a member of the Academy of Motion Picture Arts and Sciences who had been provided

with a screener copy of the movies allowed the movies to be duplicated and distributed

via the Internet.  *Warner Bros. Entm't, Inc. v. Caridi*, 346 F. Supp. 2d 1068 (C.D. Cal.

2004). Similarly, in *Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*

(259 F.3d 1186 (9th Cir. 2001)(cert denied, 534 U.S. 1127 (2002), the Ninth Circuit

affirmed an award of approximately $72,000 per infringement of several half-hour

television shows.

52.     The popularity and economic value of adult content cannot be denied.

Prior federal court decisions have recognized the high economic value of erotic material.

Where infringement was found to be willful a court awarded $100,000 (the maximum

award at the time) per adult photograph.  *Perfect 10, Inc.,* 2000 U.S. Dist. LEXIS 4564 at

11.

53.     Statutory damages serve both compensatory and punitive purposes, and thus may

be appropriate "whether or not there is adequate evidence of the actual damages suffered

by plaintiff or of the profits reaped by defendant" in order to effectuate the statutory

policy of discouraging infringement.  *Los Angeles News Serv. v. Reuters Television*

*Int'l, Ltd.,* 149 F.3d 987, 996 (9th Cir. 1998).

**6.     <u>Increased Damages for Willfulness</u>**

54.     "In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."  17 U.S.C. § 504(c)(2).  Defendants knew or should that known that their acts constituted copyright infringement.  Defendants knew that they did not have Fraserside's permission to reproduce and distribute the Works for their own commercial gain and could only remain unaware of the infringing nature of their actions by engaging in willful blindness.

55.     The "statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct."  *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233, 97 L. Ed. 276, 73 S.Ct. 222 (1952).

56.     It is appropriate that the Court use opportunities such as this to send a message of deterrence to would be infringers that, "it costs less to obey the copyright laws than to disobey them."  *International Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652, 659 (D.N. Ill. 1987), affirmed 855 F. 2d 375 (N.D. Ill. 1987).  The District Court in *Korwin* held that, "[t]o determine the amount of statutory damages the court should primarily focus upon two factors:  the willfulness of the defendant's conduct, and the deterrent value of the sanction imposed," pointing out that "courts have repeatedly emphasized that defendants must not be able to sneer in the face of copyright owners and copyright laws." Id.  See also, *Hickory Grove Music v. Andrews*, 749 F. Supp. 1001, 1003 (D. Mont. 1990);  *Van Halen Music v. Foos*, 728 F. Supp. 1495 (D. Mont. 1989).  Here, the Defendants are not only sneering in the face of the copyright owner, but sneering at the Court, denying this Court's authority by refusing to appear in this matter.  Defendants

have a multi-million dollar business. Only a very large award would have any deterrent effect.

57.     Plaintiff alleged in its Complaint that Defendants acted willfully. ECF Document 6, Paragraphs 31 through 44. A Defendant's default with respect to a complaint that pleads willfulness, as here, establishes willful copyright infringement. *See, Derek Andrew, Inc. v. Poof Apparel Corp.,* 528 F.3d 696, 702 (9th Cir. 2008) (holding that, as a result of default, "all factual allegations in the complaint are deemed true, including the allegation of (defendant's) willful infringement of (plaintiff's) trademarks").

58.     Willfulness can also be inferred from a Defendant's failure to defend. *See, Tiffany Inc. v. Luban,* 282 F.Supp. 2d 123, 124 (S.D.N.Y. 2003) ("By virtue of the default, the (defaulting party's) infringement is deemed willful."); *Fallaci v. New Gazette Literary Corp.*, 568 F.Supp. 1172, 1173 (S.D.N.Y. 1983) ("[W]e draw a further inference of willfulness from the defendant's failure to appear and defend this action, especially in light of plaintiff's allegation of willfulness and demand for "increased statutory damages applicable to willful infringers.") Considering that Defendants attorney first contacted Plaintiff's counsel July 14, 2011 and over a month later, Defendants have failed to make any appearance or response to this Court, Defendant's infringing behavior must be deemed to be intentional, wanton and willful.

59.     Defendants continue to display Plaintiff's works, even after being hailed into this copyright infringement suit. In addition to the infringements plead in the initial complaint, Defendant has new instances of infringement of Plaintiff's works on its sites, examples of which are provided in Attachment 5. Even the threat of a multi-million

dollar judgment has failed to deter Defendant from illegally feeding on Plaintiff's content. Nothing but an actual judgment in a very significant amount will deter this multi-million dollar Defendant.

60. Therefore, it is proper to award maximum damages for the intentional infringement of Fraserside's copyrighted motion pictures.

61. At the maximum of $150,000 per work when the Court finds infringement willful, statutory damages for the offense of Copyright Infringement, not including the claims of Contributory and Vicarious Copyright Infringement, Trademark Infringement and Dilution of Trademark, of $10,800,000 are appropriate as well as award of the domain name www.xhamster.com to the Plaintiff. Taking into account the potential actual damages number noted above, this statutory damages award and award of domain names is in line with actual damages.

**7. Plaintiff Is Entitled to Injunctive Relief and Attorney's Fees**

62. Fraserside seeks an injunction against future similar misconduct by Defendants. 17 U.S.C. § 502(a) makes express that the Court may issue "final injunctions on such terms   as it may deem just to prevent or restrain infringement of a copyright." Thus, such relief is authorized here by Defendants' conduct.

63. Finally, Plaintiff Fraserside also requests attorney's fees in the amount of $12,600 (36 hours of attorney time at $350 per hour). 17 U.S.C. § 505 provides that the Court may "award a reasonable attorney's fee to the prevailing party as part of the costs." *See also*, *Warner Bros. Ent, Inc. v. Duhy*, 2009 U.S. Dist. LEXIS 123332, 8-9 (C.D. Cal. Nov. 30, 2009), citing *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 289 (2d Cir. 1999) (finding a district court's award of attorneys' fees under Section 505 to be "justified based on the

court's finding of willfulness and [ ] in line with the statutory goal of deterrence") The sum of $12,600 is reasonable.

**E.** **Discussion of Eitel Factors**

64. The Court, in considering whether to grant a Motion for Default Judgment, may consider the following factors: (1) the possibility of prejudice to the Plaintiff; (2) the merits of Plaintiff's substantive claim; (3) the sufficiency of the Complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). As illustrated below, all seven of these factors favor the entry of a default judgment.

**1.** **Possibility of Prejudice to Plaintiff**

65. Fraserside will be prejudiced if default judgment is not entered. Fraserside served process on Defendants pursuant to the Fed. R. Civ. P. Defendant acknowledged this suit in its counsel's letter Plaintiff's counsel July 14, 2011. *See* Attachments 2 and 4. Although service was made upon Defendant's agents and Defendant acknowledged the suit, Defendant has chosen to ignore the authority of this Court. No Defendant has cared to appear in this action. If Plaintiff's Application for Default Judgment is not granted, it "will likely be without recourse for recovery." *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2002).

66. Moreover, due to the fact that Plaintiff has stated a valid copyright claim, Plaintiff "undeniably would be prejudiced absent an entry of permanent injunctive relief [by] default judgment." *PepsiCo, Inc. v. Distribuidora La Matagalpa, Inc.*, 510 F. Supp.2d

1110, 1116 (S.D. Fla. 2007). As such, Plaintiff will be sufficiently prejudiced to warrant the entry of default judgment.

67.     Additionally, absent a default judgment awarding damages and the domain names and enjoining Defendants from engaging in similar behavior, there would be little from stopping these Defendants (and many other persons with similar inclinations around the world) from merely engaging in this behavior again.  Furthermore, although the award of money damages may be difficult to enforce, the award of the domain name can be enforced through the United States arm of the Registrar.

**2.      The Merits of Fraserside's Substantive Claim and the Sufficiency of the Complaint**

68.     Factors two and three of the *Eitel* test require an analysis of Plaintiff's claims and the sufficiency of the Complaint.  Plaintiff has asserted a prima facie claim for copyright infringement.  Specifically, Plaintiff has alleged that a) it owns and has registered the copyright in the Works and b) the Defendants made unauthorized reproductions of those works and distributed them without Plaintiff's authorization.  These allegations state a valid claim for copyright infringement.

**3.      The Amount of Money At Stake**

69.     As shown above, actual damages of over $20,000,000 or statutory damages of $10,800,000 are appropriate for (at a statutory maximum of $150,000 per infringement, not including new infringing material that has been published on Defendant's website since this suit was filed) for Defendants' willful infringement.  The amount at stake is large, but the Defendant is a commercial venture that operates one of the busiest online commercial properties in the world.  Only a large award will serve to deter these arrogant Defendants from future illegal action

### 4. The Remaining Factors

70. Factors five, six, and seven have also been satisfied. There can be little dispute as to the material facts. Plaintiff documented seventy-five infringements of its copyrighted works on the Defendants' websites. Plaintiff has demonstrated that it owns the copyrights for these works, and that registration occurred before the infringing activity. There is no evidence that there is a dispute concerning material facts or that default was due to excusable neglect. Defendant, in its July 14 letter and subsequent August 12 email to Plaintiff's counsel has demonstrated it knows of this suit and how to hire an attorney. Defendants had an opportunity to challenge the amended Complaint, and the entry of default, but rather they chose to ignore the action entirely.

71. With regard to factor seven, although "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, the mere existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *Cal. Security Cans*, 238 F.Supp. at 1777. Moreover, Defendants' failure to answer or otherwise respond to the Complaint "makes a decision on the merits impractical, if not impossible." Id.

## II. **CONCLUSION**

Defendant has tried to play a shell game by naming a third party as the registered and responsible owner of the domain. Under ICANN rules, the registered owner of a domain is responsible for the domain. Plaintiff has followed the rules of court and the rules of ICANN by naming and serving the registered owner of the domain where copyright and trademark infringing material is being voluminously published to the world. Defendant, with full knowledge of this action and retaining counsel, has failed to respond to the Summons in any way until default was imminent.

72.     The Court should find in favor of Plaintiff's causes of action for Direct

Copyright Infringement, Contributory Copyright Infringement, Vicarious Copyright

Infringement, Inducement of Copyright Infringement, False Origin under the Lanham

Act, , and Trademark Dilution.

73.      For the reasons demonstrated above, and based on the supporting evidence,

Plaintiff Fraserside requests that a default judgment be entered against Defendants as

follows:

a.     The sum of  $10,800,000 in statutory damages on the cause of action for

Copyright Infringement, and an award of the domain names for the remaining causes of

action, and

b.     Awarding Plaintiff its attorney's fees of $12,600 and costs of suit ($350 filing

fee and service costs of $89, including foreign service and location of registered agent)

for a total of $13,039.

c.     Permanent injunctive relief enjoining Defendants and their respective agents,

servants, and employees, and any other persons or entities acting on their

behalf from infringing upon any of the Plaintiff's copyrighted works.

d.     Injunctive relief awarding the transfer of the www.XHamster.com

domain name.

e.     Such other relief as the Court deems just and proper.


DATED:  August 15, 2011                   Respectfully submitted,

                                          By:

                                               /s/ Chad L. Belville

                                               Chad  Belville, Attorney at Law

Iowa Bar # 015731

Physical Address                    304 East Beth Drive
                                    Phoenix, AZ 85042

MAILING ADDRESS:                    P.O. Box 17879
                                    Phoenix, AZ 85066

                                    Telephone:  602-904-5485
                                    FAX:  602-297-6953
                                    E-mail cbelville@azbar.org

                                 ATTORNEY FOR PLAINTIFF