IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| FRASERSIDE IP LLC, an Iowa Limited Liability Company, ) ) ) | CASE NO. 11-cv-3025-MWB |
| Plaintiff, ) ) | |
| v. ) ) ) | DEFENDANT NAMECHEAP, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION |
| WHOISGUARD, d/b/a XHAMSTER.COM and JOHN DOES 1-100 and JOE DOE COMPANIES 1-100, ) ) ) ) | TO SET ASIDE DEFAULT |
| Defendants. ) | |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................................ 1
II.  FACTUAL BACKGROUND ..................................................................................... 2
III. LEGAL STANDARD ................................................................................................. 6
IV.  ARGUMENT .............................................................................................................. 7

  A. Plaintiff Did Not Comply with the Applicable Federal and State Service of Process Requirements ............................................................................................................. 7
  B. Namecheap Meets the "Good Cause" Factors ........................................................... 9

V.   CONCLUSION ......................................................................................................... 11

Defendant, Namecheap, Inc., files this Memorandum of Points and Authorities in Support of Motion to Set Aside Default.

**I.   INTRODUCTION**

Plaintiff Fraserside IP LLC ("Plaintiff") has filed a copyright infringement lawsuit against the wrong defendant. It meant to sue XHamster.com, but instead has erroneously sued XHamster.com's domain name registrar, Defendant Namecheap, Inc. d.b.a. WhoIsGuard

{01106778.DOC}

("Namecheap") as WhoIsGuard d.b.a. XHamster.com. In addition, it failed to serve Namecheap but yet managed to obtain any an entry of default against it. As a result, Namecheap is now threatened with having a judgment entered against it in an action in which it was wrongly named.

Plaintiff failed to meet Federal Rule of Civil Procedure ("FRCP") 4's service requirements for serving corporations. Plaintiff claims that it served the summons and complaint to Namecheap, but instead served it at Namecheap's previous mailing address (a post office box location) and on an individual unassociated with Namecheap working at that location. Since the individual served was not authorized by the applicable federal and state rules to accept service on behalf of Namecheap, such service was and is insufficient.

In addition, good cause exists to set aside the default. Namecheap is not blameworthy for failing to respond to the complaint as it never received notice of the action. In addition, because Namecheap is not the real-party-in-interest in this action, Plaintiff cannot and will not be able to prove that Namecheap is liable for any of the infringement alleged in the complaint. Finally, Plaintiff will not be prejudiced if the default is set aside as XHamster.com will accept service and defend its interests in this action if named appropriately as a defendant.

For these reasons, Namecheap's Motion to Set Aside the Default should be granted.

## II. FACTUAL BACKGROUND

Namecheap, a Delaware corporation, is an ICANN-Accredited domain name registrar which allows individuals and companies to register domain names through its user interface.[1] (Declaration of Sergio Hernandez, ("Hernandez Decl.") ¶3.) The domain name

---

[1] The location of individual sites on the internet is denoted by an internet protocol ("IP") address composed of a string of four groups of digits separated by periods. Each site has a unique numeric internet address. *Smith v. Network Solutions, Inc.*, 135 F.Supp.2d 1159, 1160 (N.D. Ala. 2001). For ease of access, the numeric addresses typically correspond to more easily remembered alphanumeric "domain names" (such as <google.com>), which internet users can enter in their web browser to access specific sites. One wishing to use a specific domain name must register the name with one of numerous competing companies known as "registrars." In 1993, pursuant to a contract with the National Science Foundation, Network Solutions, Inc. ("NSI") became the sole registrar for domain names in the most commonly used TLD's (".com," ".net," " .org," and ".edu"). *Id.* at 1161. In 1998, the federal government adopted a policy favoring competitive domain name registration. "In furtherance of this

registration process is wholly automatic and no decisions are made by Namecheap as to the rights in a particular domain at the registration stage. (*Id*.)

As an additional complimentary service for new registrations, Namecheap allows its customers to register domain names privately. (Hernandez Decl., ¶4.) That is, for any domain registered, the registrant is provided the option of having Namecheap's mailing address appear in the place of his or her own true information, e.g. "WhoisGuard Protected" instead of "John Doe." Such anonymous registration services are utilized for many valid purposes such as SPAM prevention and facilitation of anonymous speech.[2] (*Id*.) To date, Namecheap provides this WhoisGuard service to over 135,000 domains, including XHamster.com. (*Id*.)

Anyone wishing to ascertain the identity of the actual registrant of a domain in question can contact Namecheap at 11400 W. Olympic Blvd., Suite 200, Los Angeles, California 90064 or through its Delaware agent for service of process, Harvard Business Services, 16192

---

policy, a private, non-profit corporation, the Internet Corporation for Assigned Names and Numbers ('ICANN'), was formed to assume responsibilities for managing the allocation of Internet Protocol numbers and the domain name system. Also as part of the transition to a competitive system, NSI's domain name registration service was divided into two separate units: a registrar and a registry." *Id.* The registry maintains a centralized, publicly accessible database of information concerning all domain names in a TLD, known as the Whois (or WHOIS) database; this database is compiled from information submitted by registrars. *Id.* While there is only a single registry for each TLD, there are numerous competing registrars. *Id.* Registrars control the IP addresses associated with particular domain names. Customers seeking to register specific domain names interact with registrars; the registrars submit information regarding domain names to the registry, which includes the information in the public Whois database.

Generally, an individual seeking to use a domain name submits an online application to a registrar. *Smith v. Network Solutions, Inc., supra,* 135 F.Supp.2d at 1161-62. "[I]f someone submits an application for a particular domain name that already exists in the Registry WHOIS database by virtue of a prior registration, that name cannot be registered again, and the applicant is advised that the sought domain name is unavailable.... If there is no existing registration for a given SLD name within a given TLD, [however,] that domain name is considered available and generally may be registered on a first-come, first served basis." *Id.* at 1162.

[2] The fact that "every person who wants to register a domain name either consents to put some sort of publicly accessible contact information on line, or is unable to register the domain name" has drawn criticism from privacy and free speech advocates. See Matthew Bierlin & Gregory Smith, *Privacy Year in Review: Growing Problems with Spyware and Phishing, Judicial and Legislative Developments in Internet Governance, and the Impacts on Privacy,* 1 I/S: J.L. & POL'Y FOR INFO. SOC'YY 279, 313-14 (2005); see also, e.g., Dawn C. Nunziato, *Freedom of Expression, Democratic Norms, and Internet Governance,* 52 EMORY L.J. 187, 256 (Winter 2003) ("Because of the important role anonymous speech serves within expressive forums-which in turn are integral to democratic governments-ICANN should, in reevaluating its policies to accord meaningful protection for freedom of expression, revise its policy requiring domain name holders publicly to disclose their names and addresses. While protecting anonymous Internet speech is clearly an important component of free speech within the United States, it is even more important for ICANN to protect the identity of speakers from countries that are more inclined to retaliate against speakers based on the ideas they express").

Coastal Highway, Lewes, Delaware 19958, Telephone: 302-645-7400, Facsimile: 302-645-1280. (Hernandez Decl., ¶5.) There is also a live support function: http://www.namecheap.com/support/livesupport.aspx. A "whois" domain name search for WhoisGuard.com yields the contact name and address of Namecheap.com described above. (*Id*., Ex. A.)

What is commonly known by all involved in the domain space is that registrars do not operate or control registered domains, irrespective of whether the information appearing in the Whois database is that of the registrant or the private registration service provider. (Hernandez Decl., ¶6.)

Previously, Namecheap.com had a mailing address listed as 8939 S. Sepulveda Blvd., #110-732, Westchester, California 90045. (Hernandez Decl, ¶7.) This address was a post office box location and not a physical address for Namecheap's office. (*Id*.)

On or about August 15, 2011, Eugene Rome, attorney for Namecheap, learned from Evan Fray-Witzer, Esq., attorney for XHamster.com, that there was a federal action filed against Namecheap in the Northern District of Iowa and that a default had already been entered against it with a motion for default judgment pending. (Declaration of Eugene Rome ("Rome Decl."), ¶3, Ex. A.) According to Mr. Fray-Witzer, he and his co-counsel, Val Gurvitz, had attempted several times to explain to Plaintiff Fraserside IP LLP's attorney, Chad L. Belville, Esq. that Namecheap has no connection to XHamster.com other than serving as its domain name registration and privacy service provider, and that he was willing to accept service of the complaint on behalf of XHamster.com so that it could defend its interests in the legal action. (*Id*.) Despite being armed with the knowledge that he had served the wrong defendant altogether, Mr. Belville refused to alter his course of action and filed a Motion for Default Judgment against Namecheap. (*Id*.)

Mr. Rome immediately emailed Mr. Belville, informing him that Namecheap never received any of the papers concerning the legal action filed against it. (Rome Decl., ¶4.) Mr. Belville sent Mr. Rome an e-mail in response attaching various documents pertaining to this action, including a purported proof of service for Namecheap. (Rome Decl., ¶5.) According to the proof of service "WhoisGuard dba XHamster was served via substituted service, **by leaving copies of the service documents in the presence of John Meyers, the person in charge of the business**, on 6/28/11, at 10:46 a.m." (emphasis added.) (*Id*., Ex. B.) There was and is no employee at Namecheap during the time of this alleged service until today named John Meyers. (Hernandez Decl., ¶8.)

On August 16, 2011, Mr. Rome sent a letter to Mr. Belville reiterating that Namecheap had just learned of the above-referenced action against it and revealed the registrant information provided to Namecheap in connection with the registration of the domain, XHamster.com. (Rome Decl., ¶6, Ex. C.) Mr. Rome also requested that Namecheap be dismissed from the action.[3] (*Id*.) Mr. Rome sent another letter that day to Mr. Belville explaining to him that he sued the wrong defendant. (*Id*., Ex. D.)

In a responsive email sent August 19, 2011, Mr. Belville refused to comply with Mr. Rome's demands claiming that **his client was loathe to voluntarily dismiss a defendant from an action where default had been entered**, regardless of whether the defendant being sued was the proper defendant or whether the defendant served had notice of the action. (Rome Decl., ¶8. Ex. E.)

In response, Mr. Rome sent a letter to Mr. Belville on August 22, 2011 again explaining the legal and factual reasons why Mr. Belville should dismiss the action against

---

[3] Mr. Rome sent similar letters providing identifying information to Mr. Belville concerning two other similar actions against Namecheap. (Rome Decl., ¶7.) The complaints had not yet been served in those actions. (*Id*.) In those two actions, Plaintiff sued Namecheap as WhoIsGuard d.b.a. HardSexTube.com and WhoIsGuard d.b.a. HardXXXTube.com, respectively. (*Id*.) In those complaints, Plaintiff listed Namecheap's current address as WhoIsGuard's business address. (*Id*.) However, in the complaint filed in the instant action, Plaintiff listed Namecheap's former mailing address as Namecheap's business address. (*Id*.)

{01106778.DOC} 5

Namecheap. (Rome Decl., ¶9, Ex. F.) In addition, Mr. Rome explained that if he did not hear from Mr. Belville by close of business on August 23, 2011, that Namecheap would retain local counsel in Iowa and pursue any action necessary to protect itself. (*Id.*)

Having not heard from Mr. Belville, Namecheap now brings this Motion to Dismiss pursuant to FRCP 55(c). (*Id.*)

## III.  LEGAL STANDARD

A defendant may move to set aside a default entered against him or her for "good cause." FRCP 55(c). "'[M]ost decisions…hold that relief from a default judgment requires a stronger showing for excuse than relief from a mere default order.'" (citations omitted) *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998). Courts look unfavorably on judgments entered in default; they prefer the matters be adjudicated on the merits. *Oberstar v. F.D.I.C.*, 987 F.2d 494, 504 (8th Cir. 1993).

In determining whether good cause exists, a district court must weigh "whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and if the other party would be prejudiced if the default were excused." *Johnson*, 140 F.3d at 784; *Stephenson v. El-Batrawi*, 524 F.3d 907, 912 (8th Cir. 2008). "Meritorious defense" is determined by whether the evidence presented by defendant would permit a finding for the defaulting party that would be contrary to the result reached in default. *Stephenson*, 524 F.3d at 914. With respect to prejudice to the plaintiff, it must be to such a degree that if the default is set aside, evidence may be lost, discovery may be more onerous, or there may be greater opportunities for fraud and collusion among the defending parties. *Id.* at 915.

## IV. ARGUMENT

### A. Plaintiff Did Not Comply with the Applicable Federal and State Service of Process Requirements

When serving process on a defendant, the method of service must be reasonably calculated so that the defendant receives actual notice of the legal action. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798-799 (1983). Service of process on a corporation is properly effectuated when done in compliance with FRCP 4(h)(1)(B), the service of process rules in the state where the action is commenced, or the service of process rules in the state where the defendant was served. FRCP 4(e)(1), 4(h)(1). The service requirements delineated in Rule 4 are strictly construed by the courts. *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 300 (7th Cir. 1991). Here, Plaintiff failed to comply with any of the applicable service of process requirements.

Since this action was filed in the Northern District of Iowa and the defendant was supposedly served in Westchester, California, the applicable service of process rules of either of those states should have been met by Plaintiff. Furthermore, since Namecheap is a corporation, Plaintiff was required to adhere to the relevant service rules pertaining to corporations pursuant to FRCP 4(h)(1)(B), Iowa state law, or California state law.

Under the federal rules, a corporation must be served by delivering a copy of the summons and complaint to either a corporate officer, managing/general agent, or any other agent of the corporation authorized by appointment or law to receive service of process. FRCP(h)(1)(B).

Under California law, a corporation may be served by delivering copies of the summons and complaint to, the president "or other head of the corporation," vice-president, secretary or assistant secretary, a treasurer or assistant treasurer, general manager or other persons authorized by the corporation to receive service of process; the person designated by the

{01106778.DOC} 7

corporation as its statutory agent for service of process; or the California Secretary of State. Cal. Code Civ. Pro. §416.10.

According to the Iowa Rules of Civil Procedure, a corporation may be served by personally serving "any present or acting or last known officer thereof, or any general or managing agent, or any agent or person now authorized by appointment or by law to receive service of original notice." Iowa Rule Civ. Pro. 56.1.

Here, the proof of service submitted by Plaintiff indicated that the papers were served to a "John Meyers" located at Namecheap's previous mailing address. The address at which Namecheap was purported served is merely a post office box location and is not Namecheap's office location. Furthermore, at the time of the purported service, there was no Namecheap employee with the name of "John Meyers" (let alone an officer or managing agent) nor was anyone at Namecheap's previous mailing address authorized by law or by Namecheap to accept service on Namecheap's behalf. Finally, "John Meyers" is clearly not Debra Bowen, the California Secretary of State. As such, Plaintiff did not meet any of the applicable legal requirements necessary for effective service of process as John Meyers was not authorized to accept service on behalf of Namecheap.

The Proof of Service submitted by Plaintiff also demonstrates that service was insufficient. According to the proof of service "WhoisGuard dba XHamster was served via substituted service**, by leaving copies of the service documents in the presence of John Meyers, the person in charge of the business**, on 6/28/11, at 10:46 a.m." (See Rome Decl., ¶6, Ex. B.) From this declaration by the process server, it is apparent that John Meyers must have been the person working at the post office box location where the papers were "served." Further, it is clear that Mr. Meyers knew he was not authorized to accept service on Namecheap's behalf and refused to do so, which was why the process server merely "[left] copies of the documents in the presence of John Meyers."

Therefore, Plaintiff's service of process was insufficient and the default against Namecheap must be set aside.

**B.     Namecheap Meets the "Good Cause" Factors**

In determining whether there is "good cause" to set aside a default, the courts look at whether (1) the defaulting party was blameworthy or culpable; (2) whether he or she has a meritorious defense; (3) and whether the other party would be prejudiced if the default were set aside. *Johnson*, 140 F.3d at 784. Here, setting aside the default is permissible since Namecheap was not culpable for defaulting; it has a meritorious defense; and Plaintiff will not be prejudiced if the default were set aside.

1.   <u>Namecheap was not culpable or blameworthy for failing to respond to the complaint</u>.

As described in section IV(A)(1) above, Namecheap was not properly served with the summons and complaint in this action. Moreover, since the address where Namecheap was served was merely a post office box location and the person served was not authorized by Namecheap to accept service nor was he obligated to notify Namecheap of the service, Namecheap never received actual notice of complaint or that default had been entered against it until it was notified by XHamster.com's attorney on August 15, 2011. Throughout this period, Namecheap maintained a physical address at 11400 Olympic Blvd., which was disclosed on its website. Moreover, its Delaware agent for service of process address was and is reflected on the Delaware Secretary of State website. Once Namecheap received notice of the action, it acted immediately to rectify the situation. Within the next eight days, Namecheap made several attempts to explain to Plaintiff's attorney that it had sued the wrong entity, that service was ineffective and default was improper, and even provided Plaintiff the domain name registration information for XHamster.com. However, Plaintiff's attorney refused to dismiss Namecheap from the action or even to amend the complaint to add the real-party-in-interest, XHamster.com,

even though XHamster.com was willing to accept service and defend itself in this action. Plaintiff gave Namecheap no other choice but to bring this Motion to Set Aside the Default.

As such, Namecheap is not culpable of blameworthy for defaulting on the complaint.

### 2. Namecheap has a meritorious defense.

As discussed above, a "meritorious defense" is determined by whether the evidence presented by defendant would permit a finding for the defaulting party that would be contrary to the result reached in default. *Stephenson*, 524 F.3d at 914. Here, Namecheap's meritorious defense is that it is not the real-party-in-interest in this action.

The complaint alleges culpable conduct by XHamster.com. Namecheap does not do business as XHamster.com. Its only affiliation to XHamster.com is as its domain name registrar that also provides a WhoIsGuard identity protection against spammers and the-like. As such, it will be impossible for Plaintiff to show that Namecheap in any way directed the alleged actions by XHamster alleged in the complaint.

A thorough explanation of legal defenses, safe harbors under the Digital Millennium Copyright Act, the Communication Decency Act or the case law safe harbors and limitations on liability would be far too expansive given the limited scope of this motion. The Court is referred to a discussion of the operative legal principles providing Namecheap with a defense appearing in Eugene Rome's August 16, 2011 letter, which appears as Exhibit "D" to the Declaration of Eugene Rome.

For this reason, Namecheap has a meritorious defense that would lead to a different result than what would be reached by default judgment.

### 3. Plaintiff will not suffer any prejudice if the default is set aside.

For the Court to find that plaintiff will be prejudiced if the default is excused, the prejudice must be to such a degree that if the default is set aside, evidence may be lost, discovery

may be more onerous, or there may be greater opportunities for fraud and collusion among the defending parties. *Id*. at 915. Here, Plaintiff will suffer no prejudice if the default is set aside.

First, XHamster.com, the real-party-in-interest, wants to defend itself in this action. Given that XHamster.com is the appropriate defendant, Plaintiff would have access to all the evidence and discovery it would need to investigate its claims if the default was set aside and the complaint amended to name XHamster.com as the defendant. Therefore, rather than lost evidence or difficulties with discovery, Plaintiff will have access to more of both. Furthermore, there would be no opportunities for collusion because Namecheap is a defendant-in-error in this action who hopes to be dismissed from the case, and if XHamster.com is named as a party, it will be the only named defendant in this action. There is no benefit for Namecheap to collude with XHamster.com in this matter.

Therefore, Plaintiff will not suffer any prejudice if the default is set aside. However, Namecheap will be severely prejudiced if default were not set aside as a judgment will be entered and enforced against it even though it was never the real-party-in-interest in this action and never engaged or sanctioned any of the alleged culpable conduct alleged in the complaint.

## V. CONCLUSION

WHEREFORE, Defendant, Namecheap, Inc., respectfully requests the Court enter an Order Setting aside the default, and allowing Namecheap 14 days to file an appropriate motion under Rule 12.

   */s/ Vernon P. Squires*
VERNON P. SQUIRES (#LI0014929)
      of
BRADLEY & RILEY PC
2007 First Avenue SE
P.O. Box 2804
Cedar Rapids, IA 52406-2804
Phone: (319) 363-0101
Direct Dial: (319) 861-8702
Fax:    (319) 363-9824
Email: vsquires@bradleyriley.com

*ATTORNEYS FOR THE DEFENDANT NAMECHEAP, INC. d/b/a WHOISGUARD (erroneously sued as WHOISGUARD d/b/a XHAMSTER.COM*

Copy to:

Connie Alt
Jennifer E. Rinden
Shuttleworth & Ingersoll, P.C.
500 US Bank Bldg., P.O. Box 2107
Cedar Rapids, IA 52406

*Attorneys for xHamster.com*

Chad Belville
Chad Belville Attorney at Law
P.O. Box 17879
Phoenix, AZ 85066

*Attorneys for Plaintiff
Fraserside IP LLC*

      CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of this document was served upon the persons listed on this document at the addresses indicated by CM/ECF electronic notification or by enclosing the same in an envelope with postage fully paid and by depositing said envelope in a United States Post Office depository this 25th day of August 2011. I declare under penalty of perjury that the foregoing is true and correct.

         */s/ Janet Privratsky*