IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| FRASERSIDE IP LLC, an Iowa Limited Liability Company,<br><br>     Plaintiff,<br><br>v.<br><br>WHOISGUARD, d/b/a XHAMSTER.COM and JOHN DOES 1-100 and JOE DOE COMPANIES 1-100,<br><br>     Defendants. | CASE NO. 11-cv-3025-MWB<br><br>**DECLARATION OF EUGENE ROME IN SUPPORT OF DEFENDANT'S MOTION SET ASIDE THE ENTRY OF DEFAULT PURSUANT TO FRCP 55(c)** |

## DECLARATION OF EUGENE ROME

I, Eugene Rome, declare as follows:

1.     I am the managing partner of Rome & Associates A.P.C. and am the attorney for Defendant Namecheap, Inc. d.b.a. WhoIsGuard ("Namecheap") (erroneously sued as WhoIsGuard d.b.a. XHamster.com).

2.     I have personal knowledge of the facts set forth in this declaration and if called upon to testify under oath, I could and would testify competently thereto.

3.     On or about August 15, 2011, I learned from Evan Fray-Witzer, Esq., attorney for XHamster.com, that there was a federal action against Namecheap in the Northern District of Iowa and that a default had already been entered against it with a motion for default judgment pending.  According to Mr. Fray-Witzer, he and his co-counsel, Val Gurvitz, had attempted several times to explain to Plaintiff Fraserside IP LLP's attorney, Chad L. Belville, Esq. that Namecheap has no connection to XHamster.com other than serving as its domain name registration and privacy service provider, and that he was willing to accept service of the

complaint on behalf of XHamster.com so that it could defend its interests in the legal action. Despite being armed with the knowledge that he had served the wrong defendant altogether, Mr. Belville refused to alter his course of action and filed a Motion for Default Judgment against Namecheap. A true and correct copy of the August 15, 2011 email sent to me by Mr. Fray-Witzer is attached hereto as Exhibit "A" and is incorporated herein by reference.

      4.     I proceeded to contact Mr. Belville by e-mail stating as follows:

> My firm serves as counsel to Namecheap, Inc. d/b/a WhoisGuard ("Namecheap"). Earlier this morning I was contacted by an attorney named Evan Fray-Witzer, who informed me that your client Fraserside IP, LLC has filed a series of lawsuits against, among others, WhoisGuard, which you contend does business as various identified websites. I have also received the attached letters, wherein you were specifically notified that WhoisGuard is merely a private registration service provider and does not register or operate any domain names or associated websites. Mr. Fray-Witzer further informs me that you have obtained a default against WhoisGuard in connection with one of the actions and are currently seeking default judgment. Namecheap has not received service of summons in any of these cases. Further, Namecheap has not received a copy of your application for default or any default judgment filings. Please provide a copy of the service documents in Fraserside IP v. WhoisGuard as well as any other action in which you contend Namecheap to have been served.

      5.     Mr. Belville proceeded to send me an e-mail with various documents pertaining to this action, including a purported proof of service for Namecheap. According to the proof of service "WhoisGuard dba XHamster was served via substituted service, **by leaving copies of the service documents in the presence of John Meyers, the person in charge of the business,** on

6/28/11, at 10:46 a.m." (emphasis added.)  A true and correct copy of this proof of service is attached hereto as Exhibit "B" and is incorporated herein by reference

6.      On August 16, 2011, I sent a letter to Mr. Belville stating that Namecheap had just learned of the above-referenced action against it and revealed the registrant information provided to Namecheap in connection with the registration of the domain, XHamster.com.  I also requested that Namecheap be dismissed from the action.  Attached hereto as Exhibit "C" and incorporated herein by reference is a true and correct copy of my August 16, 2011 letter to Mr. Belville identifying the registrant.  Attached hereto as Exhibit "D" is a true and correct copy of my letter explaining that the wrong defendant was sued and that my client should be dismissed.

7.      I sent similar letters providing identifying registration information to Mr. Belville concerning two other similar actions against Namecheap also filed in the Northern District of Iowa.  These are *Fraserside IP LLC, v. Netvertise Ltd, et al.* (Case No.: 11-cv-03033-MWB) and *Fraserside IP LLC, v. Netvertise Ltd, et al.* (Case No.: 11-cv-030340MWB).  The complaints had not yet been served in those actions.  In those two actions, Plaintiff sued Namecheap as WhoIsGuard d.b.a. HardSexTube.com and WhoIsGuard d.b.a. HardXXXTube.com, respectively.  In those complaints, Plaintiff listed Namecheap's current address as Namecheap's business address.  However, in the complaint filed in the instant action, Plaintiff listed Namecheap's former mailing address as Namecheap's business address.

8.      In a responsive email dated August 19, 2011, Mr. Belville refused to comply with my demands claiming that **his client was loathe to voluntarily dismiss a defendant from an action where default had been entered**, regardless of whether the defendant being sued was the proper defendant or whether the defendant served had notice of the action.  Attached hereto as Exhibit "E" and incorporated herein by reference is a true and correct copy of Mr. Belville's August 19, 2011 email to me.

9.      In response, I sent a letter to Mr. Bellvile on August 22, 2011 again explaining the legal and factual reasons why Mr. Belville should dismiss the action against Namecheap.  In addition, I explained that if he did not hear from Mr. Belville by close of business on August 23, 2011, that Namecheap would retain local counsel in Iowa and pursue any action necessary to protect itself.  Attached hereto and incorporated herein by reference as Exhibit "F" is a true and correct copy of my August 22, 2011 letter to Mr. Belville.  To date, I have not heard back from Mr. Belville or his client.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 24th day of August 2011 in Los Angeles, California.

Eugene Rome

Copy to:

Connie Alt
Jennifer E. Rinden
Shuttleworth & Ingersoll, P.C.
500 US Bank Bldg., P.O. Box 2107
Cedar Rapids, IA  52406

*Attorneys for xHamster.com*

Chad Belville
Chad Belville Attorney at Law
P.O. Box 17879
Phoenix, AZ  85066

# Exhibit A

| | |
|---|---|
| **From:** | Evan Fray-Witzer [Evan@CFWLegal.com] |
| **Sent:** | Monday, August 15, 2011 8:50 AM |
| **To:** | Eugene Rome |
| **Subject:** | FW: Federal Litigation in Iowa |
| **Attachments:** | Complaint.pdf; Default against whoisguard.pdf; motion to default.pdf |

| | |
|---|---|
| **Importance:** | High |

Hi again.  I have no idea why this email didn't get forwarded to you.

Evan

---

Evan Fray-Witzer
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 804
Boston, MA 02116
(617) 426-0000 (Tel.)
(617) 507-8043 (Fax)
Evan@CFWLegal.com

-----Original Message-----
From: evan@cfwlegal.com
Sent: Tuesday, August 9, 2011 10:21pm
To: legal@namecheap.com
Subject: Federal Litigation in Iowa

Dear Counsel:

My office represents one of your clients, xHamster.com in the defense of litigation that has
been filed in the Northern District of Iowa.  The plaintiff in that action (Fraserside IP)
has improperly named WhoIsGuard as the official named defendant in the action.  (As you'll
see from the caption, the action is styled as Fraserside IP v. WhoIsGuard d/b/a
xHamster.com.)  It had been our assumption that the Plaintiff simply did not understand
WhoIsGuard's role in domain registration and we alerted him to the fact that WhoIsGuard has
no actual connection with xHamster (other than providing privacy services).  Nevertheless,
Plaintiff's counsel applied for - and received - a default against WhoIsGuard.  Within the
next few days, he plans to file for a default judgment against WhoIsGuard as well.  I have
attached copies of the complaint, motion for default, and default.

Because xHamster has not been properly named or served (allegedly, WhoIsGuard was served), we
have a bit of  procedural nightmare - we can't even oppose the default judgment because,
officially, xHamster is not a defendant in this action - WhoIsGuard is.  And, of course,
WhoIsGuard has huge exposure in this matter because (if it was actually served), it may be
waiving some or all of its substantive defenses if it allows the default judgment to enter.
It seems to be in both of our interests to make sure that doesn't happen.

Please contact me as soon as you have had an opportunity to review these materials so that we
might coordinate a defense and protect WhoIsGuard's interests as well as xHamster's
interests.

Thank you.

1

Evan

(P.S. According to docket reports, Fraserside has named WhoIsGuard in a second similar suit.)

_____
Evan Fray-Witzer
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 804
Boston, MA 02116
(617) 426-0000
(617) 507-8043 (fax)
Evan@CFWLegal.com

2

# Exhibit B

Civil Action No. 11-cv-3025-MWB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*   WhoIsGuard, dba XHamster.com

was received by me on *(date)*   06/02/2011   .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

☑ Other *(specify)*:   WhoIsGuard, dba XHamster.com was served via substituted service, by leaving copies of the service documents in the presence of John Meyers, the person in charge of the business, on 6/28/11, at 10:46 AM.

My fees are $ _____ for travel and $   89.00   for services, for a total of $   89.00   .

I declare under penalty of perjury that this information is true.

Date:   06/29/2011

                       *Server's signature*

                    Nelson Tucker, Process Server
                       *Printed name and title*

                    Process Service Network
                  20832 Roscoe Blvd., Suite 106
                        Winnetka, CA 91306
                       *Server's address*

Additional information regarding attempted service, etc:

Addess of service:
8939 S. Sepulveda Blvd., #110-732
Westchester, CA 90045-3631

Served: 6/28/11, at 10:46 AM

# Exhibit C

# Rome & Associates

2029 century park east, suite 1040, los angeles, ca 90067
tel: (310) 282 0690 / fax: (310) 282 0691

August 16, 2011

**VIA FIRST CLASS MAIL AND FACSIMILE: (602) 297-6953;**
**AND EMAIL: CBELVILLE@AZBAR.ORG**

Chad L. Belville, Esq.
304 East Beth Drive
Phoenix, AZ 85042

P.O. Box 17879
Phoenix, AZ 85042

> Re: *Fraserside IP LLC, v. WhoIsGuard, et al., United States District Court in and for the Northern District of Iowa, Central Division Case No.: 11-cv-03025-MWB*

Dear Mr. Belville:

My firm serves as counsel to Namecheap, Inc., dba Whoisguard ("Namecheap").

Yesterday, we learned that Fraserside IP LLC ("Fraserside") initiated an action against Namecheap as well as several other defendants in connection with alleged copyright infringement of Fraserside's marks by the registrant of the domain name <xhamster.com> (the "Domain").

Please be advised that the registrant information provided to Namecheap in connection with the registration of the Domain is:

| | |
|---|---|
| Name: | Domain Administrator |
| Organization: | Hammy Media Ltd |
| Street Address: | P.O. Box 59532 |
| City: | Limassol |
| State/ Prov: | State |
| Zip/Postal Code: | 4010 |
| Country: | CY |
| Email Address: | admin@xhamster.com |
| Phone Number: | +44.2032878125 |
| Fax Number: | +1.5555555555 |

Chad L. Belville, Esq.
August 16, 2011
Page 2

Namecheap has also disabled private registration services for this Domain.

Now that you know the identity of the actual registrant of the Domain, we request Namecheap be dismissed from the suit immediately.

Very truly yours,

Eugene Rome

cc:     Namecheap, Inc.

**Exhibit D**

# Rome & Associates

2029 century park east, suite 1040, los angeles, ca 90067
tel: (310) 282 0690 / fax: (310) 282 0691

August 16, 2011

**VIA FIRST CLASS MAIL AND FACSIMILE: 602-297-6953;**
**AND EMAIL: CBELVILLE@AZBAR.ORG**

Chad L. Belville, Esq.
304 East Beth Drive
Phoenix, AZ 85042

P.O. Box 17879
Phoenix, AZ 85042

> Re:  *Fraserside IP LLC, v. WhoIsGuard, et al., United States District Court in and for the Northern District of Iowa, Central Division Case No.: 11-cv-03025-MWB*
>
> *Fraserside IP LLC, v. Netvertise Ltd, et al., United States District Court in and for the Northern District of Iowa, Central Division Case No.: 11-cv-03033-MWB*
>
> *Fraserside IP LLC, v. Netvertise Ltd, et al., United States District Court in and for the Northern District of Iowa, Central Division Case No.: 11-cv-03034-MWB*

Dear Mr. Belville:

As you know, my law firm serves as counsel to Namecheap, Inc. dba WhoisGuard ("Namecheap"). I write in order to assist you in your evaluation of Namecheap's role in the domain registration process as well as its role [or lack thereof in the case here] in the copyright infringement and trademark infringement alleged by Fraserside IP in its above actions (collectively, the "Complaints").

In each of the Complaints, Fraserside asserts claims for (1) Copyright Infringement; (2) Contributory Copyright Infringement; (3) Vicarious Copyright Infringement; (4) Inducement of Copyright Infringement; (5) False Designation of Origin under the Lanham Act; (6) Dilution of Trademark.

Namecheap is a domain name registrar and an anonymous registration service provider. For the reasons discussed more fully below, both caselaw and statutory law afford various forms of immunity and safe harbors from liability arising out of general activities, which include the matters giving rise to the claims alleged by Fraserside in its Complaints.

### A. The DMCA Creates a Safe Harbor from Copyright Liability For Online Service Providers

The Digital Millennium Copyright Act, 17 U.S.C. § 512 ("DMCA") contains a "safe harbor" provision allowing for immunity from claims of copyright infringement for service providers such as Namecheap. A service provider qualifies for safe harbor under the provisions if it meets the requirements set forth in sections 512(c). Specifically, so long as a service provider:

    (A)(i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;

    (ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or

    (iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

    (B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

    (C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

17 U.S.C. § 512(c).

As explained further below, Namecheap has complied with all the provisions under this code to qualify for the safe harbor immunity designated under the DMCA, which limits the liability of service providers. Consequently, it is insulated from the copyright infringement claims alleged by in the Complaints.

As a principal item, Namecheap categorically qualifies as a service provider under the DMCA's definitions. Under § 512(k)(1)(A), a service provider is "an entity offering the transmission, routing, or providing of connections for digital online communication, between or among points specified by a user, of materiel of the user's choosing, without modification to the content of the material as sent or received." Indeed, Namecheap is "a provider of online services or network access, or the operator of facilities therefor." 17 U.S.C. § 512(k)(1)(A) (1998). Under Section 512(k)(1)(B), the code further states, "the term 'service provider' means a provider of online

services or network access, or the operator of facilities therefor, and includes an entity described in subparagraph (A)."

Specifically, there are four major categories of network systems offered by service providers that qualify for protection under the safe harbor provisions. First, "Conduit Communications" include the transmission and routing of information, such as an email or Internet service provider, which store the material only temporarily on their networks. 17 U.S.C. § 512(a). Second, "System Caching" refers to the temporary copies of data that are made by service providers in providing the various services that require such copying in order to transfer data. 17 U.S.C. § 512(b). Third, "Storage Systems" refers to services which allow users to store information on their networks, such as a web hosting service or a chat room. 17 U.S.C. § 512(c). Finally, "Information Location Tools" refer to services such as search engines, directories, or pages of recommended web sites which provide links to the allegedly infringing material. 17 U.S.C. § 512(d). Moreover, the legislative history reports that the DMCA's definition of "service provider" was intended to include those "providing Internet access, e-mail, chat room and web page hosting services." *H.R.Rep. No.* 105-551, at 64 (1998) (emphasis added).

First, Namecheap registers domain names "of the user's choosing" and takes no censure control over such registration of domains, that is "without modification to the content of the material as sent or received." Second, Namecheap has reasonably implemented a copyright takedown policy in compliance with the DMCA. Upon receipt of notice, Namecheap implements its procedures in compliance with the DMCA. Finally, Namecheap has registered its agent with the Copyright Office under 512(c)(2). Furthermore, Registration and web hosting are among the services that Namecheap provides for its clients. Thus, Namecheap is exactly the type of "service provider" that the DMCA safe harbor provisions contemplate. Namecheap has taken all measures necessary to qualify it for the DMCA safe harbor protection.

No take-down notices have been provided in connection with any domain or content appearing at such domain at issue in the actions. Consequently, Namecheap remains covered by the DMCA safe harbors. It cannot be found liable.

**B.**     *The Lanham Act and Trademark Claims*

Next, the asserted Lanham Act and trademark claims against Namecheap is untenable given its limited activity of registering the domain at issue. As clearly stated by the Court in *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F.Supp. 949, 959, (C.D.Cal.,1997) *acceptance of registrations for domain names by registrar of Internet domain names does not constitute use of the mark in connection with goods or services, as required to support Lanham Act unfair competition claim.*

> Where domain names are used to infringe, the infringement does not result from NSI's publication of the domain name list, but from the registrant's use of the name on a Web site or other Internet form of communication in connection with goods or services. NSI is not a "printer or publisher" of Web sites, or any other form of Internet

> "publication." As discussed below in the section on contributory infringement, NSI's involvement with the use of domain names does not extend beyond registration. NSI's liability cannot be premised on an argument that it prints or publishes the list of domain names, because the list is not the instrument or forum for infringement. NSI's liability, if it exists at all, would stem from registrants' use of domain names in connection with other services not provided by NSI.

*Id.*

In further analyzing a similar case, the *Lockheed Martin Corp.* court reasoned that "registration of a trademark as a domain name does not constitute use of the trademark on the Internet in connection with goods or services, and therefore was not prohibited by section 43(a). *Id.* This reasoning applies more strongly to NSI, which has not registered domain names resembling SKUNK WORKS for its own use, but has merely accepted domain name registrations from others." *Lockheed Martin Corp. v. Network Solutions, Inc., supra*, 985 F.Supp. at 959. The Lanham Act claim was therefore dismissed.

Consequently, this claim, too, is foreclosed.

### C.     *The Claims are Further Pre-Empted Under the Communications Decency Act*

The Communications Decency Act ("CDA") states that "[no] provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," and expressly preempts any state law to the contrary. 47 U.S.C. §§ 230(c)(1), (e)(3). "The majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir.2006) (quoting *Zeran v. America Online, Inc.*, 129 F.3d 327, 331 (4th Cir.1997)); *see also Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003) (citing *Batzel v. Smith*, 333 F.3d 1018, 1026-27 (9th Cir. 2003)). A service provider is "responsible" for the development of offensive content, so as to preclude provider from immunity under Communications Decency Act ("CDA"), only if it in some way specifically encourages development of what is offensive about the content. Communications Decency Act of 1996, § 509 (a, b), 47 U.S.C.A. § 230 (a, b). Otherwise, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions-such as deciding whether to publish, withdraw, postpone, or alter content-are barred." *Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997).

Furthermore, while the CDA is a law targeted towards defamation liability, the scope of immunity is quite broad. In the case of *Beyond Systems, Inc. v. Keynetics, Inc.*, 422 F. Supp. 2d 523 (D. Md. 2006), the court found the CDA immunity afforded service providers in the civil context extends to negligence, state law unfair competition, tortious interference with prospective economic advantage, claims under Title II of the Civil Rights Act of 1964 and breach of contract claims. In that case, the court notes the reach of the CDA to immunize ISPs from liability in several settings besides

defamation suits. *Beyond Systems, Inc.* 422 F. Supp. 2d at 536, citing to *Ben Ezra, Weinstein & Co. v. America Online, Inc.*, 206 F.3d 980, 986 (10th Cir.2000) (quoting *Zeran* and applying § 230 to a negligence claim against AOL); *Perfect 10, Inc. v. CCBill, LLC*, 340 F.Supp.2d 1077 (C.D.Cal.2004) (applying § 230 to claim of unfair competition based on state law); *Novak v. Overture Services, Inc.*, 309 F.Supp.2d 446 (E.D.N.Y.2004) (applying § 230 to claim of tortious interference with prospective economic advantage); *Noah v. AOL Time Warner, Inc.*, 261 F.Supp.2d 532, 538 (E.D.Va.2003) (applying § 230(c) to a claim based on Title II of the Civil Rights Act of 1964 and dismissing claims for intentional infliction of emotional distress, unjust enrichment, negligence and fraud); *Schneider v. Amazon.com, Inc.*, 108 Wash.App. 454, 464-65, 31 P.3d 37, 42 (Wash.Ct.App.2001) (noting that many courts have applied § 230(c) to breach of contract claims).

*Zeran* succinctly explains that "by its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with the third party user of the service." 129 F.3d at 330. The court noted, among other things, that "notice-based liability for interactive computer service providers would provide third parties with a no-cost means to create the basis for future lawsuits." *Id.* at 333. To impose liability on ISPs would place an "impossible burden" upon them, confronting them with a specter of tort liability with every complaint they received. *Id.* To require ISPs to make legal de-terminations about their customers' activity might well lead to the termination of service, which would have a severe impact on Internet speech and commerce, a result Congress sought to avoid by enacting Section 230. *Id.*

Case law shows that the type of activities alleged to have been performed by Namecheap are similar and in some aspects identical to the functions performed by other defendant internet access providers that have been granted immunity by the CDA. Specifically, Namecheap's role as information service provider and web-hosting service provider describes an internet service provider for purposes of CDA immunity. *Schneider v. Amazon.com, Inc.*, 31 P.3d 37 (Wn.App.2001); *Does 1-30 v. Franco Productions*, 2000 WL 816779, *1(N.D.Ill.). Namecheap is of the kind of service provider that the CDA contemplates and grants immunity to, and specifically immunity broad enough to cover the claims raised in the Complaints. Namecheap maintains a passive role and has no control over the content of its users – it cannot be held liable for information originating with a third party. The registrant himself is the third-party user of Namecheap's services and the originator of the content on which the claims identified in the Complaints are based. The registrant's information has been revealed and provided cooperatively upon receipt of the Complaints. Fraserside is now free to pursue its claims against that party.

### D. Namecheap is an accredited registrar and administers a reasonable policy under the UDRP

As an ICANN-Accredited registrar, Namecheap administers the Uniform Domain-Name Dispute-Resolution Policy (often referred to as the "UDRP") as promulgated by ICANN. This is the established procedure for the resolution of domain name disputes. *Lockheed Martin Corp. v. Network Solutions, Inc., supra*, 141 F.Supp.2d at p. 654 -655 affirms the logic and reasoning behind the implementation of the UDRP procedures:

Although plaintiff now tries to backtrack somewhat from the position that defendant as registrar should perform gatekeeper functions for mark owners, even the modified gatekeeper role it now proposes is untenable. Sheer volume alone would prohibit defendant performing the role plaintiff would assign. Defendant simply could not function as a registrar, or as keeper of the registry, if it had to become entangled in, and bear the expense of, disputes regarding the right of a registrant to use a particular domain name. The fact that defendant could theoretically do what plaintiff asks does not mean that defendant is obligated to do so at the risk of financial ruin. *The reason the UDRP was developed was to provide the mechanism to resolve these disputes. Not only would imposing plaintiff's scheme render the UDRP nugatory, it would cause the domain name registration system in its entirety not to be feasible.*

*Lockheed Martin Corp. v. Network Solutions, Inc., supra,* 141 F.Supp.2d at p. 654 -655 (emphasis added).

The UDRP is the "reasonable policy" addressed by 15 U.S.C. § 1114(2)(D)(i)(II)(ii)(II). *Sallen v. Corinthians Licenciamentos Ltda.,* 2002 US Dist. LEXIS 19976 (D. Mass. Dec. 19, 2000), *rev'd,* 273 F.3d 14 (1st Cir. 2001). The administration of this policy is all that is required of Namecheap in order to fit within the safe harbor provisions of Section 1114.

As recognized by the *Lockheed Martin* court as well as ICANN in adopting the UDRP, registrars simply would not be able to function if they were called upon to serve as the fact finders for each dispute presented by its thousands upon thousands of clients. Rather, the UDRP is the appropriate procedure for the resolution of such claims. Namecheap abides by the UDRP as an ICANN-accredited registrar. It is therefore immune from Plaintiff's ACPA and 15 U.S.C. 1114 claim.

Specifically, the Court of Appeals for the Ninth Circuit addressed the very issue of a registrar's liability for trademark infringement and Lanham Act violations in *Lockheed Martin Corporation v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir. 1999). There, Lockheed Martin sued Network Solutions, claiming contributory service mark infringement, infringement, unfair competition, and service mark dilution, all in violation of the Lanham Act, also seeking declaratory relief for registering several domains names infringing Lockheed Martin's trademarks. *See id.* at 983.

In reviewing the district court's award of summary judgment in favor of Network Solutions, the appellate court went through a thorough analysis of the governing case law. It reiterated that in order for a party to be found liable for contributory infringement it "must supply a 'product' to a third party with which the third party infringes [the complaining party's] service mark" or a service involving "direct control and monitoring" of the infringing party's operations. *Id.* at 984-985.

In finding that Network Solutions' activities failed to fall under either category and create a basis for assigning liability to its actions the appellate court reasoned:

All evidence in the record indicates that NSI's role differs little from that of the United States Postal Service: when an Internet user enters a domain-name combination, NSI translates the domain-name combination to the registrant's IP Address and routes the information or command to the corresponding computer. Although NSI's routing service is only available to a registrant who has paid NSI's fee, NSI does not supply the domain-name combination any more than the Postal Service supplies a street address by performing the routine service of routing mail. As the district court correctly observed,

Where domain names are used to infringe, the infringement does not result from NSI's publication of the domain name list, but from the registrant's use of the name on a web site or other Internet form of communication in connection with goods or services . . . . NSI's involvement with the use of domain names does not extend beyond registration.

The "direct control and monitoring" rule established by *Hard Rock* and *Fonovisa* likewise fails to reach the instant situation. The district court correctly recognized that NSI's rote translation service does not entail the kind of direct control and monitoring required to justify an extension of the "supplies a product" requirement.

*Lockheed Martin Corporation, supra,* 194 F.3d at 984-985.

The Appellate Court went on to affirm summary judgment for Network Solutions. *Id.* at 987.

Namecheap's activities fall squarely within the permissible registrar activities addressed by the above cases and statutes. Consequently, Fraserside's causes of action are barred as a matter of law.

### E. Causes of Action for Secondary Liability Are Barred

As explained by the two *Network Solutions* cases discussed above, Namecheap must be shown to be a direct and knowing participant in the infringing activity, rather than a mere automatic conduit for registration services.

In *Perfect 10, Inc. v. Visa International Service, Association, et al.,* 494 F.3d 788 (9th Cir. 2007), as a result of numerous acts of infringement by various websites based in several countries, plaintiff filed suit against credit card companies and several affiliated banks and data processing services, alleging contributory and vicarious copyright and trademark infringement as well as violations of California laws proscribing unfair competition and false advertising, violation of the statutory and common law right of publicity, libel, and intentional interference with prospective economic advantage. Defendants moved to dismiss the initial complaint under F.R.C.P. 12(b)(6). The district court granted the motion, dismissing the libel and intentional interference claims with

prejudice but granting leave to amend the remaining claims. *Id.* 793. Following amendment, the court again considered the motion to dismiss which it granted and dismissed the action.

There, the corporate defendants did not dispute that the activities of the websites administered by the other defendants were infringing. However, such infringement could not create a basis for liability for the corporate defendants engaging in automatic functions, as does Namecheap in this instance. *Id.* at 808-809. Indeed, as acknowledged by the *Perfect 10* court, *Emery v. Visa International Service Association,* 95 Cal.App.4th 952, 116 Cal.Rptr.2d 25 (2002), precludes liability for defendants performing a role similar to Namecheap's, both under secondary liability and aiding and abetting theories.

> In *Emery,* a California appellate court affirmed a grant of summary judgment in favor of Visa, finding that Visa did not exercise the requisite control over merchants marketing foreign lottery tickets to impose secondary liability under the state's unfair competition or false advertising laws. *Id.* at 959-964, 116 Cal.Rptr.2d 25. *Emery* found that an "unfair practices claim under section 17200 cannot be predicated on vicarious liability.... A defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate section 17200 or 17500." *Id.* at 960, 116 Cal.Rptr.2d 25 (internal citations omitted). Because "Visa itself played no part in preparing or sending any 'statement' that might be construed as untrue or misleading under the unfair business practices **\*809** statutes," it could not be liable for unfair competition. *Id.* at 964, 116 Cal.Rptr.2d 25. The false advertising claim also necessarily failed because "even if Visa allowed the merchants to use its logo, trade name, or trademark, it would not be liable for false advertising. There is no duty to investigate the truth of statements made by others." *Id.* (citations omitted). *Emery* is dispositive of Perfect 10's claims that the Defendants are secondarily liable under California unfair competition and false advertising laws and the district court properly dismissed them.[FN20]

*Id.* at 808-809.

After adopting the reasoning of *Emory,* the Perfect 10 court dismissed Perfect 10's claims:

> [20] Perfect 10 alleges that Defendants aided and abetted the websites' violations of Perfect 10's rights of publicity, acquired by assignment from its models, in violation of Cal. Civil Code § 3344 and the common law right of publicity. This aiding and abetting claim fails for the same reasons as the aiding and abetting claims under unfair competition and false advertising. Even if such liability is possible under California law-a proposition for which Perfect 10 has provided no clear authority-Defendants lack sufficient control or personal

> involvement in the infringing activities to be so liable. *See Schulz,* 152
> Cal.App.4th at 93-94, 60 Cal.Rptr.3d 810; *Emery,* 95 Cal.App.4th at
> 962-63, 116 Cal.Rptr.2d 25.

*Id.* at 809.

Consequently, in addition to the immunity afforded to Namecheap, as discussed above, Fraserside's claims are also barred by the well-reasoned pronouncements of *Perfect 10,* as well as the authorities cited therein.

### F.    Rule 11 Sanctions

In his July 14, 2011 letter, xHamster's attorney, Evan Fray-Witzer, wrote to you:

> You assert that WhoisGuard is doing business as xHamster.com. Nothing could be
> further from the truth – as even the most minimal of investigations (as required under
> Fed. R. Civ. P. 11) – would have revealed to you. WhoisGuard is a company that
> enables persons registering domain names to do so without having all of their contact
> information detailed in the Whoisregistry databases. According to WhoisGuard's
> website, very person who registers their domain name through www.namecheap.com
> receives free WhoisGuard protection. According to my research, WhoisGuard
> provides this service to more than 135,000 domains (including xHamster.com). Other
> than the fact that WhoisGuard is listed in the whois registry, it has no connection
> whatsoever with xHamster.com.

> You might want to think of WhoisGuard like the United States Post Office, which
> provides (for a fee) post office boxes to businesses. You have, then sued the Post
> Office because you noticed that someone has an address listing a P.O. Box. Although
> I do not represent WhoisGuard, I imagine that they will have a wonderful argument
> for the recovery of their fees if they are required to defend this matter in any way.

> In any event, and in accordance with the provisions of Fed. R. Civ. P. 11, I am hereby
> giving you written notice and an opportunity to withdraw your return of service since
> it is painfully obvious that xHamster.com has not been served. Please note that I am
> NOT authorized to accept service on xHamster.com's behalf, though you should feel
> free to serve them in accordance with the Hague Convention. If xHamster is required
> to incur any legal costs as a result of your improperly informing the Court that service
> has been effectuated, I will be required to file a motion for sanctions under Rule 11.

Further, in his August 11, 2011 letter, Mr. Fray-Witzer wrote:

> I am writing to you in the context of my representation of xHamster. As you know,
> Jennifer Rinden will again be serving as our local counsel in that matter and she is
> copied on this email, along with Evan Fray-Witzer, who will also be entering an
> appearance in the case.

As you know from my letter of July 14, 2011, you have named (and, you claim, served) the wrong party. WhoIsGuard has no affiliation with xHamster whatsoever. Given that you knew all of this, I was surprised to learn from the Court's docket that you nevertheless filed a Motion for Default against WhoIsGuard. I was all the more surprised that you did not provide me with a courtesy copy of your motion at the time of filing, since you knew that I would not be notified through the ECF system of the same. Indeed, since xHamster is not actually properly named, there was no way for us to oppose the motion through the ECF system. Your proceeding down this path with the wrong named defendant is of no benefit to anyone and so I would propose the following: If Fraserside IP amends the complaint to properly name xHamster as a defendant, I will agree to accept service of process on their behalf, thereby obviating your need to make service under the Hague Convention. (Please note that xHamster is NOT waiving its right to contest jurisdiction and, indeed, intends to do so.) To avoid confusion, you would also need to remove the default as to WhoIsGuard and dismiss them out from the litigation. At that point, though, we will be able to proceed, just as we are doing in the Youngtek matter. It does your client no good to pursue a judgment against the wrong defendant and, indeed, doing so having been informed that the defendant is improperly named only creates potential consequences for you and your client.

Namecheap cannot be liable under the law, for the reasons discussed above. More importantly, it is not a proper defendant to this action. Your repeated assertions that Namecheap is doing business as the identified operators of the domain names is without factual basis. Moreover, your insistence on proceeding against Namecheap in the face of clear indications by the true defendants that Namecheap is not affiliated with xHamster coupled with the realities of the domain registration business, which you claim as your expertise on your website, are in stark violation of Federal Rules of Civil Procedure, Rule 11.

In significant part, Section (b) of Fed.R.Civ.P. 11 provides:

(b) Representations to the Court.

By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

**(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;**

       **(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and**

       (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed.R.Civ.P. 11. (emphasis added).

       You have **no basis** for contending that Namecheap does business as any of the identified entities. Further, you have **no basis** for stating the subject claims against Namecheap. **Consequently, on Namecheap's behalf, we demand that you dismiss my client from the above actions and give notice that you will do so by no later than 4:00 p.m. on August 22, 2011.**

       Should you fail to do so and cause Namecheap to appear and defend itself in Court, we will seek attorneys' fees pursuant to the Lanham Act, 15 U.S.C. § 1117(a) and sanctions pursuant to Fed.R.Civ.P. 11(c) against your client as well as you personally. Let me be very clear here: If Namecheap is not dismissed and has to litigate these cases we will sue you for malicious prosecution. This is not an empty threat but an assurance of the events that will follow the conclusion of these lawsuits. Unless the requested action is taken, local counsel will be retained to move to set aside default in the *Fraserside IP LLC, v. WhoIsGuard, et al., United States District Court in and for the Northern District of Iowa, Central Division Case No.: 11-cv-03025-MWB* action and to move to dismiss in the other two actions. We will then seek reimbursement of any fees and costs expended from you.

       This letter is not intended to constitute, nor shall it be deemed to constitute, a full statement of all facts, rights or claims relating to this matter, nor is it intended, nor shall it be construed as a waiver, release or relinquishment of any rights or remedies available to my client, whether legal or equitable, all of which are herby expressly reserved.

                      Very truly yours,

                      Eugene Rome

cc:    Namecheap, Inc.

# Exhibit E

from **Chad Belville** cbelville@azbar.org
to Eugene Rome <erome@romeandassociates.com>
cc Liz Saura <lsaura@romeandassociates.com>,
Legal@namecheap.com
date Fri, Aug 19, 2011 at 3:22 PM
subject Re: Fraserside IP, LLC
signed-by gmail.com
Important mainly because you often read messages with this label.

Mr. Rome;

I have received your letters this week. I must point out that the zip code for my Post Office Box is 85011, which is delivery, please use the address provided below.

I will file amended complaints in the matters regarding Netvertising if the registered owner shown in the WhoIs dat date of initial filing. These have not yet been served.

The matter involving Xhamster.com is much more complicated, and as I stated earlier my client is not willing to vo initiate action against me personally if your client is not immediately dismissed does not start a professional relatic SolidHost case. You know that naming the registered owner of a domain is not malicious prosecution, so let's re-

I am willing to listen to anything you or your client would like to propose. Given the posture of your first letter, plea
- Hide quoted text -

--
Chad Belville
PO Box 17879
Phoenix, AZ 85011
FAX 602-297-6953
Licensed in Iowa and Arizona;
Federal Districts of Arizona, Colorado and the Northern District of Iowa;
The 9th Circuit Court of Appeals and the 10th Circuit Court of Appeals
The United States Supreme Court

IMPORTANT NOTICE: THIS COMMUNICATION MAY BE PRIVILEGED OR CONFIDENTIAL. This message is in the intended recipient, do not copy, forward, or distribute this message. If you received this message in error, plea at the phone number above.

| | |
|---|---|
| from | **Chad Belville** cbelville@azbar.org |

| | |
|---|---|
| to | Eugene Rome <erome@romeanc |
| cc | Liz Saura <lsaura@romeandasso |
| | Legal@namecheap.com |
| date | Fri, Aug 19, 2011 at 3:23 PM |
| subject | Re: Fraserside IP, LLC |
| signed-by | gmail.com |
| | Important mainly because you oft |

e limit your communication to email, fax or letter.

Respectfully,

- Hide quoted text -

--
Chad Belville
PO Box 17879
Phoenix, AZ 85011
FAX 602-297-6953
Licensed in Iowa and Arizona;
Federal Districts of Arizona, Colorado and the Northern District of Iowa;
The 9th Circuit Court of Appeals and the 10th Circuit Court of Appeals
The United States Supreme Court

IMPORTANT NOTICE: THIS COMMUNICATION MAY BE PRIVILEGED OR CONFIDENTIAL. This message is in
the intended recipient, do not copy, forward, or distribute this message. If you received this message in error, plea
at the phone number above.

# Exhibit F

# Rome & Associates

2029 century park east, suite 1040, los angeles, ca 90067
tel: (310) 282 0690  /  fax: (310) 282 0691

August 22, 2011

<u>**VIA FIRST CLASS MAIL AND FACSIMILE: 602-297-6953;
AND EMAIL: CBELVILLE@AZBAR.ORG**</u>

Chad L. Belville, Esq.
304 East Beth Drive
Phoenix, AZ 85042

P.O. Box 17879
Phoenix, AZ 85011

>    **Re:**   *Fraserside IP LLC, v. WhoIsGuard, et al., United States District Court in
>    and for the Northern District of Iowa, Central Division Case No.: 11-cv-
>    03025-MWB*
>
>    *Fraserside IP LLC, v. Netvertise Ltd, et al., United States District Court in
>    and for the Northern District of Iowa, Central Division Case No.: 11-cv-
>    03033-MWB*
>
>    *Fraserside IP LLC, v. Netvertise Ltd, et al., United States District Court in
>    and for the Northern District of Iowa, Central Division Case No.: 11-cv-
>    03034-MWB*

Dear Mr. Belville:

Please consider this letter as a response to your e-mail dated August 19, 2011.

### A.  *Fraserside IP LLC, v. Netvertise Ltd. Cases Nos. 03033-MWB and 03034-MWB*

As I understand from your e-mail, amended complaints naming the identified registrants rather than Namecheap, Inc. or WhoisGuard will be filed in the two Netvertise cases. If this is indeed the case, we will consider these items closed from our end. In the event that my understanding is not accurate and Fraserside IP LLC ("Fraserside") intends to include Namecheap in its amended complaints, please so advise at your earliest convenience.

### B. *Fraserside IP LLC, v. WhoIsGuard, et al., Case No.: 11-cv-03025-MWB*

In aid of our discussions, I think it would be helpful to address what Namecheap and does not do in the domain registration chain.

Again, Namecheap is an ICANN-Accredited registrar,[1] which allows individuals and companies to register domain names through its user interface. Critically, the registration process is wholly automatic and no decisions are made by Namecheap as to the rights in a particular domain at the registration stage.

As an additional complimentary service for new registrations, Namecheap allows its customers to register domain names privately. That is, for any domain registered, the registrant is provided the option of having Namecheap's service address appear in the place of his or her own true information, e.g. "WhoisGuard Protected" instead of "John Doe." Such anonymous registration

---

[1]    The location of individual sites on the internet is denoted by an internet protocol ("IP") address composed of a string of four groups of digits separated by periods. Each site has a unique numeric internet address. *Smith v. Network Solutions, Inc.,* 135 F.Supp.2d 1159, 1160 (N.D. Ala. 2001). For ease of access, the numeric addresses typically correspond to more easily remembered alphanumeric "domain names" (such as <google.com>), which internet users can enter in their web browser to access specific sites. One wishing to use a specific domain name must register the name with one of numerous competing companies known as registrars. In 1993, pursuant to a contract with the National Science Foundation, Network Solutions, Inc. ("NSI") became the sole registrar for domain names in the most commonly used TLD's (".com," ".net," " .org," and ".edu"). *Id.* at 1161. In 1998, the federal government adopted a policy favoring competitive domain name registration. "In furtherance of this policy, a private, non-profit corporation, the Internet Corporation for Assigned Names and Numbers ('ICANN'), was formed to assume responsibilities for managing the allocation of Internet Protocol numbers and the domain name system. Also as part of the transition to a competitive system, NSI's domain name registration service was divided into two separate units: a registrar and a registry." *Id.* The registry maintains a centralized, publicly accessible database of information concerning all domain names in a TLD, known as the Whois (or WHOIS) database; this database is compiled from information submitted by registrars. *Id.* While there is only a single registry for each TLD, there are numerous competing registrars. *Id.* Registrars control the IP addresses associated with particular domain names. Customers seeking to register specific domain names interact with registrars; the registrars submit information regarding domain names to the registry, which includes the information in the public Whois database.

Generally, an individual seeking to use a domain name submits an online application to a registrar. *Smith v. Network Solutions, Inc., supra,* 135 F.Supp.2d at 1161-62. "[I]f someone submits an application for a particular domain name that already exists in the Registry WHOIS database by virtue of a prior registration, that name cannot be registered again, and the applicant is advised that the sought domain name is unavailable.... If there is no existing registration for a given SLD name within a given TLD, [however,] that domain name is considered available and generally may be registered on a first-come, first served basis." *Id.* at 1162.

services are unquestionably legal and serve valid purposes such as SPAM prevention and facilitation of anonymous speech, a Constitutionally-protected right.[2]

That Namecheap offers the WhoisGuard service and how it functions is clearly stated on the Namecheap and the WhoisGuard websites, e.g.:

**A.    What is WhoisGuard™?**
Everyday domain owner's information is harvested by spammers from publicly available whois to send spam. WhoisGuard avoids this issues by placing our information in whois and provides an option to redirect email and regular mail to the customer's real address. During the process of transferring the email, we try to avoid obvious junk email and regular mail, thus relieving the customer from junk.

**B.    How to Obtain WhoisGuard?**
Namecheap.com provides WhoisGuard free with all new domain name registrations and transfers. Domains can be registered at Namecheap.com for a $9.69 and less. Protection can also be purchased for existing domains for a low price.

**C.    How Does WhoisGuard™ Work?**
We place our information in public whois so that your information is not available to spammers. We don't cut off legitimate contacts by passing on valid mail and emails.

*See* www.whoisguard.com, last visited August 22, 2011.

_____

[2]    The fact that "every person who wants to register a domain name either consents to put some sort of publicly accessible contact information on line, or is unable to register the domain name" has drawn criticism from privacy and free speech advocates. See Matthew Bierlin & Gregory Smith, *Privacy Year in Review: Growing Problems with Spyware and Phishing, Judicial and Legislative Developments in Internet Governance, and the Impacts on Privacy,* 1 I/S: J.L. & POL'Y FOR INFO. SOC'YY 279, 313-14 (2005); see also, e.g., Dawn C. Nunziato, *Freedom of Expression, Democratic Norms, and Internet Governance,* 52 EMORY L.J. 187, 256 (Winter 2003) ("Because of the important role anonymous speech serves within expressive forums-which in turn are integral to democratic governments-ICANN should, in reevaluating its policies to accord meaningful protection for freedom of expression, revise its policy requiring domain name holders publicly to disclose their names and addresses. While protecting anonymous Internet speech is clearly an important component of free speech within the United States, it is even more important for ICANN to protect the identity of speakers from countries that are more inclined to retaliate against speakers based on the ideas they express").

Anyone wishing to ascertain the identity of the actual registrant of a domain in question can contact Namecheap at 11400 W. Olympic Blvd., Suite 200, Los Angeles, California 90064 or through its Delaware agent for service of process, Harvard Business Services, 16192 Coastal Highway, Lewes, Delaware 19958, Telephone: 302-645-7400, Facsimile: 302-645-1280. There is also a live support function. http://www.namecheap.com/support/livesupport.aspx. You accurately identified the Olympic address in both *Fraserside IP LLC, v. Netvertise Ltd.* complaints.

What is apparent from all the material appearing on the WhoisGuard and the Namecheap websites and commonly known by all involved in the domain space is that registrars do not operate or control registered domains, irrespective of whether the information appearing in the Whois database is that of the registrant or the private registration service provider. Yet, in its xHamster action, Fraserside identifies the defendant as WhoisGuard **doing business as** xHamster.com. Further, Fraserside alleges that WhoisGuard doing business as xHamster.com "competes against Plaintiff in the distribution and sale of adults-only audio-visual works through Internet distribution." Complaint, ¶ 19. Additional allegations concerning the purportedly wrongful acts of the "Defendant," designated to be WhoisGuard, is set out in Paragraphs 24, 25, 32, 33, 34, 35, 37, etc.

In his July 14, 2011 letter, xHamster's attorney, Evan Fray-Witzer, wrote to you:

You assert that WhoisGuard is doing business as xHamster.com. Nothing could be further from the truth – as even the most minimal of investigations (as required under Fed. R. Civ. P. 11) – would have revealed to you. WhoisGuard is a company that enables persons registering domain names to do so without having all of their contact information detailed in the Whoisregistry databases. According to WhoisGuard's website, very person who registers their domain name through www.namecheap.com receives free WhoisGuard protection. According to my research, WhoisGuard provides this service to more than 135,000 domains (including xHamster.com). Other than the fact that WhoisGuard is listed in the whois registry, it has no connection whatsoever with xHamster.com.

You might want to think of WhoisGuard like the United States Post Office, which provides (for a fee) post office boxes to businesses. You have, then sued the Post Office because you noticed that someone has an address listing a P.O. Box. Although I do not represent WhoisGuard, I imagine that they will have a wonderful argument for the recovery of their fees if they are required to defend this matter in any way.

In any event, and in accordance with the provisions of Fed. R. Civ. P. 11, I am hereby giving you written notice and an opportunity to withdraw your return of service since it is painfully obvious that xHamster.com has not been served. Please note that I am NOT authorized to accept service on xHamster.com's behalf, though you should feel free to serve them in accordance with the Hague Convention. If xHamster is required to incur any legal costs as a result of your improperly informing the Court that service has been effectuated, I will be required to file a motion for sanctions under Rule 11.

Consequently, at least as of July 14, 2011, you (and your client Fraserside) were on notice that WhoisGuard was not the operator of the website, xHamster.com.

Fraserside purports to have served some individual called John Meyers with the complaint in the xHamster matter. Namecheap has no such employee. John Meyers' position with Namecheap is not indicated in the service documents. We do not know who John Meyers is. Under Iowa Rules of Civil Procedure, Rule 56.1 a corporation may be served by effectuating personal service as follows: "Upon a partnership, or an association suable under a common name, or a corporation, by serving any present or acting or last known officer thereof, or any general or managing agent, or any agent or person now authorized by appointment or by law to receive service of original notice, or on the general partner of a partnership." Mr. Meyer, whoever he is, is not a proper party to receive service on Namecheap's behalf.

Fraserside failed to properly serve Namecheap in the xHamster action. Further, Fraserside was provided notice that Namecheap dba WhoisGuard was not the right defendant to the action. Still, you elected to seek default against WhoisGuard and, despite repeated notices by Evan Fray-Witzer, have filed a motion for default judgment against the wrong party – WhoisGuard. Fraserside's default judgment motion parallels the accusations of wrongdoing found in its Complaint. This is specifically the conduct that contravenes Rule 11.

In your August 19, 2011 e-mail, you contend that "the matter involving xHamster.com is much more complicated" and decline to dismiss it from this action. Further, in your August 15, 2011 e-mail you state: "My client has extensive documentation of copyright infringement and believes this is a strong case. A settlement offer was previously made, but apparently XHamster fired their attorney at that time and retained Gurvits." Irrespective of the degree of copyright infringement and your perceived merit of Fraserside's action, you have sued the wrong party. **Proceeding against that party with notice from both Namecheap and the proper defendant that the wrong party has been sued is malicious prosecution.** Fraserside is free to pursue xHamster for the full extent of copyright/trademark infringement it perceives is ongoing in connection with xHamster.com activities. However, it cannot so proceed against Namecheap.

Your August 19, 2011 e-mail references the *SolidHost v. Namecheap* matter in favor of the proposition that naming the registered owner of the domain is not malicious prosecution. As a principal matter, that is not the position advocated in this action. Second, in that action, Namecheap was sued for its refusal to transfer a domain to SolidHost where presented with conflicting proof that the subject domain was hijacked. Namecheap was not named as a private registration service provider but rather as a company which failed to transfer a domain to the party claiming rightful ownership thereof. Those facts have no relationship to the present dispute. All of Fraserside's claims are predicated upon volitional copyright and trademark infringement on the xHamster.com website. Namecheap had no role in that conduct. Further, it did not receive notice of this activity until early last week, at which point it promptly identified the registrants and removed privacy protection.

In light of the foregoing discussion, Namecheap has done nothing which would expose it to any legal liability. Consequently, we again request that you withdraw the motion for default judgment and dismiss Namecheap dba WhoisGuard from each of the three identified actions. Please

provide confirmation that it has done so by August 23, 2011, 5:00 p.m., PST. In the event that we fail to receive such notice we will be forced to retain local counsel and proceed with our defense of any action that continues to be asserted against Namecheap and/or WhoisGuard. For all the reasons explained above, we will seek to recover any sums spent from parties responsible for continuing to sue Namecheap notwithstanding clear evidence that it is not a proper defendant.

This letter is not intended to constitute, nor shall it be deemed to constitute, a full statement of all facts, rights or claims relating to this matter, nor is it intended, nor shall it be construed as a waiver, release or relinquishment of any rights or remedies available to my client, whether legal or equitable, all of which are herby expressly reserved.

Very truly yours,

Eugene Rome

cc:     Namecheap, Inc.